## Richmond.

TALLEY v. METROPOLITAN LIFE INSURANCE COMPANY.

January 12, 1911.

Absent, Cardwell, J.

1. LIFE INSURANCE—*Application*—*Suppression of Material Facts*—Representations in an application for a policy of life insurance should not only be true, but full. The insurer has the right to know the whole truth, and a lack of fullness, if designed, in a respect material to the risk, is tantamount to a false representation, and is attended by like consequences. The suppression or concealment of material facts known to the applicant is a fraud upon the company and avoids the policy.

2. LIFE INSURANCE—*Application*—*Notice of Disease*—*Further Inquiry*—*Failure to Disclose Facts Affecting Risk*—Although an applicant for life insurance may have answered "Yes" to the question "Any disease of chest or lungs," and this may have been sufficient to put the company on its guard as to applicant's lung trouble, yet if that enquiry was subsequently prosecuted by the comprehensive question "Give full particulars of every illness you have had since childhood, and name of every physician who has ever attended you or prescribed for you," the latter question comprehends within its scope of enquiry the former, and calls for particulars touching the categorical answer thereto, and a failure to make full disclosure of serious illness in recent years, fresh in the recollection of the applicant and materially affecting the risk, will avoid the policy founded thereon.

Error to a judgment of the Circuit Court of the city of Richmond, in a statutory action on an insurance policy. Judgment for the defendant. Plaintiff assigns error.

*Affirmed.*

The complaint filed in this case is in the following words and figures, to-wit:

"In the Circuit Court of the city of Richmond.

"Lemuella Talley complains of the Metropolitan Life Insurance Company, a corporation, chartered by and doing business under the laws of the State of New York, who has been duly summoned to answer this: For that the defendant by virtue of the policy of insurance herewith filed, owes the sum of one thousand dollars ($1,000.00) with interest from November 27, '07, to the plaintiff because of the death of Wm. J. Talley, whose life was insured by said policy, and who died on or about the 27th day of November, 1907, in the city of Richmond, Virginia.

"The said Wm. J. Talley is also known by the name of Wm. W. J. Talley and was the son of the said plaintiff, and at the time of his death had complied with all of the conditions and violated none of the provisions of said policy, and since then the said plaintiff has complied with all of the conditions and violated none of the provisions of said policy.

"But said defendant has refused and still refuses to pay said amount to the said plaintiff, to the damage of the said plaintiff of eleven hundred dollars ($1,100.00). Therefore she brings her suit and files this complaint."

*L. O. Wendenburg*, for the plaintiff in error.

*Wellford & Taylor*, for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This suit was brought by the plaintiff in error to collect from the defendant insurance company a life insurance policy in which she was named as the beneficiary. Upon the trial there was a demurrer to the evidence and a judgment thereon in favor of the defendant company, to which judgment this writ of error was awarded.

The record shows that on the 29th day of June, 1907, W.

W. J. Talley made application to the Metropolitan Life In-
surance Company for a policy of life insurance upon his life,
for the benefit of his mother, the plaintiff in error, in the
amount of $1,000. At the time the application was made Tal-
ley was twenty-one years of age, had finished his course in
medicine, and had just taken his examination before the State
Medical Board for license to practice medicine. On July 1,
1907, the applicant was examined by Dr. A. L. Wellford, the
local medical examiner for the insurance company, to ascertain
his standing as an insurance risk. This examination accom-
panied and formed a part of the application for insurance
made two days before. Among other questions the applicant
was required to answer in writing were the following: "Ma-
laria or other fevers?" Ans. "Yes." "Any disease of the
chest or lungs?" Ans. "Yes." "Give full particulars of
every illness you have had since childhood, and name of every
physician who has ever attended you or prescribed for you?"
In answer to this last question the applicant stated that in
November, 1906, he had a mild attack of urethritis, without
complications, which lasted seven days, when he was attended
by Dr. Bosher; that in December, 1905, he had a mild at-
tack of bronchitis, without complications, lasting three days,
in which he had been attended by no physician. These are the
only questions and answers material to this inquiry. With
this examination as the basis for determining the character of
the risk, the policy was issued and delivered to the mother of
the insured on the 22nd of July, 1907, and the insured died
of tuberculosis of the lungs four months thereafter.

The uncontradicted evidence shows that the insured was at-
tended by Dr. Miller in April or May, 1907. This appears in
the claimant's statement to the company for payment of the
policy. It further appears that Dr. Call attended the insured
in April, 1907, for a cold. It further appears that in June,
1907, before making application for the policy in question,
the insured consulted Dr. Tompkins and told him that he was

not satisfied with his physical condition; that he had been feeling badly for some time; that he had a cough, fever, loss of appetite and of energy. On this occasion Dr. Tompkins after making a physical examination of his patient procured from him a sample of his sputum, which he examined and found therein the germs of tuberculosis. It further appears that Dr. Hopkins, the bacteriologist for the city of Richmond, examined this sample of sputum and found therein a large number of tubercular bacilli, indicating that the patient had tuberculosis of the lungs or larynx. This examination of the sputum by Dr. Hopkins agreeing with the conclusion reached by Dr. Tompkins from his examination, the latter communicated the result to the insured. It satisfactorily appears that all of these consultations by the insured with physicians in regard to his health, and the serious if not alarming truth that they developed with respect to his physical condition, were fresh in the mind of W. W. J. Talley, when he was examined for insurance by Dr. Wellford, the company's medical examiner; and yet he suppressed it all, gave the medical examiner no intimation of one of these important and damaging facts touching his health, and in answer to the question, "Give full particulars of every illness you have had since childhood, and name every physician who has ever attended you or prescribed for you," he suppresses the names of Dr. Miller, Dr. Call, and Dr. Tompkins, all of whom he had consulted very recently before the question was asked, and mentioned Dr. Bosher who had treated him in November, 1906, for urethritis, as the only physician who had ever attended him or prescribed for him. The evidence further shows that before the contract of insurance was completed by delivery to his mother, July 22, 1907, the insured was, under the advice of Drs. Tompkins and Call, in the Ironville Sanatorium for treatment as a consumptive, where he remained for about six weeks, when he returned to his home in Richmond to die there of consumption three months later. Dr. Wellford, the company's medi-

cal examiner, testifies that if the insured had told him that he was suffering from fever and loss of appetite, and that his sputum had been examined disclosing the presence of tuberculosis bacilli, he would have marked him a bad risk, and that he would have been rejected by the company.

The law applicable to these facts is stated by May on Insurance as follows: "Representations should not only be true, but they should be full. The insurer has a right to know the whole truth. And a lack of fulness, if designed, in a respect material to the risk, is tantamount to a false representation, and is attended by like consequences. This lack of fulness is termed a *concealment*, which is the designed and intentional withholding of some fact material to the risk which the insured in honesty and good faith ought to communicate to the insurer. It is not mere unintentional silence or inadvertence. It is a positive intentional omission to state what the applicant knows, or must be presumed to know, ought to be stated. It is a suppression of the truth, whereby the insurer is induced to enter into a contract which he would not have entered into had the truth been known to him. It is a deception whereby the insurer is led to infer that to be true, as to a material matter, which is not true. Hence strictly speaking, under the general law of insurance, there can be no concealment of a fact which is not known to the applicant." 1 May on Ins. (4th ed.), sec. 200.

In the case at bar the applicant knew before he was examined for this insurance July 1, 1907, that he had been attended by Dr. Miller in April, 1907. He knew that he had been attended by Dr. Call, for a cold, in April, 1907. He knew that he had consulted Dr. Tompkins in June, 1907, very shortly before his application was filed; that he had been examined by Dr. Tompkins, and that his sputum had been examined, disclosing the fact that he was afflicted with a dangerous malady. These important and necessarily controlling facts in determining his character as a risk were not only

knowingly suppressed by the insured, who was himself a doctor, but were purposely and designedly withheld by him when answering a direct question, propounded by the company, which would have elicited such facts if the truth had been told. This concealment of these material facts was a fraud on the company, "tantamount to a false representation and attended by like consequences." May on Ins., sec. 200.

The plaintiff in error contends that when the insured answered "Yes," to the question, "Any disease of chest or lungs," he thereby put the defendant on guard as to his lung trouble. The examining physician produces the original application which shows that the answer to this question was first, "No," and written over "Yes." He testifies, in explanation of this change, that when the insured stated, subsequently, that in December, 1905, he had a mild attack of bronchitis, which is a chest or lung disease, he then changed the original answer, "No," to "Yes," in order to cover the mild attack of bronchitis. This was misleading rather than calculated to put the examining physician on inquiry. It indicated that the "bronchitis" was the only form of lung trouble the applicant had ever been troubled with. Assuming, however, that the categorical answer, "Yes," was sufficient to put the physician on inquiry, that inquiry was subsequently prosecuted in the comprehensive question, "Give full particulars of every illness you have had since childhood, and name of every physician who has ever attended you or prescribed for you." This question comprehended within its scope of inquiry the former question, and called for particulars touching the categorical answer thereto. As already seen, if it had been answered truthfully, the insurer would have been possessed of the very material facts which were fully known to and suppressed by the applicant. Facts which, if fully disclosed, must necessarily have resulted in a rejection of the applicant as an insurable risk. In answer to this question, the insured, in honesty and good faith, should

have communicated to the insurer the facts material to the risk which were known to him, and having failed to do so, the claimant cannot recover.

The circuit court properly sustained the demurrer to the evidence, filed by the defendant company, and its judgment must, therefore, be affirmed.

*Affirmed.*