# Richmond

### PEOPLES LIFE INSURANCE COMPANY OF WASHINGTON, D. C. v. BERNICE CRAVEN.

November 21, 1949.

Record No. 3538.

Present, Hudgins, C. J., and Gregory, Eggleston, Buchanan, Staples and Miller, JJ.

The opinion states the case.

*Easley & Hoge*, for the plaintiff in error.

*Samuel H. Allen*, for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

This is an action at law instituted by notice of motion for judgment by Bernice Craven against the Peoples Life Insurance Company of Washington, D. C., to recover on a life insurance policy issued by that company insuring the life of John W. Reese of Kenbridge, Lunenburg county, Virginia, in favor of his daughter, the plaintiff, in the sum of $500.

The contract of insurance is what is commonly known as an industrial policy, on which there was a fixed weekly premium. No medical examination was required as a condition to the issuance of the policy, but it was based on a

written application made and signed by the insured on November 26, 1947. The application disclosed that in reply to certain questions the insured stated, among other things, that he had never had "high blood pressure," that he had received no "medical attention" during the past five years, and had last consulted a physician in 1935 for a "cold."

The policy was issued on December 8, 1947, and the insured died on December 17, 1947.

Shortly after the death of the insured, the beneficiary named in the policy filed with the Insurance Company a written proof of claim, signed by herself, to which was attached a certificate signed by Dr. H. B. Showalter of Kenbridge who had attended the insured during his last illness. The physician's report showed that the insured had died of a cerebral hemorrhage to which hypertension or high blood pressure was a contributing cause. The report also stated that within two years of the date of the issuance of the policy the same physician had treated the insured for a "cerebral hemorrhage (small)."

On the first page of the policy the following provision is printed in plain type:

"POLICY WHEN VOIDABLE: This policy shall not take effect if the Insured has died before its date, in which event premiums paid will be refunded. Subject to the provision entitled 'Incontestable After Two Years,' this policy will be voidable by the Company if, within two years prior to its date, the Insured has been ill, consulted a physician, or received treatment for any illness, injury or disease, unless reference to such illness, consultation or treatment is endorsed on this policy by the Company (except when such illness, consultation or treatment is referred to in the application for this policy) or was not material to the risk. If this policy is so voided, premiums paid will be refunded."

Upon receipt of the attending physician's report, accompanying the proof of claim, the Insurance Company denied liability on the policy beyond the sum of $7.20, that being the amount of the premiums which had been paid, and

which sum it tendered to the beneficiary. This tender was declined and the present suit was instituted.

In advance of the trial the Insurance Company filed written grounds of defense in which it asserted, (1) that it had elected to avoid the policy under the above provision, that pursuant to this provision its liability was limited to the amount of the premiums paid, and that this sum had been tendered and paid into court; and (2) that the policy was void in that it had been procured upon the basis of statements made by the insured in the application which were false, fraudulent and material to the risk assumed.

The trial resulted in a verdict and judgment in favor of the plaintiff beneficiary for the sum of $500, that being the face amount of the policy. To review that judgment the present writ was awarded the Insurance Company, which makes before us the same contentions advanced and determined adversely to it in the court below.

In our opinion the first defense asserted by the Insurance Company is determinative of its liability, and, therefore, it will not be necessary that we consider the second.

The record shows that the insured suffered a stroke on December 10, 1947, and died one week later. Dr. Showalter, a local physician who attended the insured during his last illness, testified that his death was due to subarachnoid hemorrhage, or a rupture of a blood vessel in the brain, which was "brought about by high blood pressure."

This physician further testified that on April 30, 1947, the insured called at his office; that he "complained of being dizzy;" that he showed "a weakness in his right arm and right leg, and some difficulty with his speech." The physician examined the insured, found that his blood pressure was high, and diagnosed his trouble as "a slight stroke" occasioned by a small cerebral hemorrhage. He gave the insured a prescription "to bring his blood pressure down and told him to go home and go to bed." Beyond this, the physican did not indicate to the insured, so far as the

record discloses, the result of the diagnosis and the seriousness of his condition.

The chief underwriter at the home office of the Insurance Company testified that under no circumstances would the company have issued the policy if it had known that the insured showed a tendency to hypertension, or high blood pressure, and had suffered and been treated for a cerebral hemorrhage. The report of Dr. Showalter which accompanied the proof of claim was, the underwriter said, the first information the company had that the insured had been treated for a cerebral hemorrhage within a few months of the issuance of the policy.

There was, of course, no endorsement on the policy showing the consultation by the insured of the physician, or the treatment for his illness on April 30, 1947.

The evidence is conflicting as to what occurred when the application for the policy was taken and signed on November 26, 1947. The soliciting agent who filled out the application, and another representative of the Insurance Company who was then present, testified that answers, as given by the insured, were correctly written in the application; and that in reply to the several inquiries whether he had had "high blood pressure," "heart trouble," etc., the insured answered, "No."

The beneficiary, Mrs. Craven, who was likewise present, testified that in response to each of these inquiries the insured (her father) replied: "Not to my knowing of."

Likewise, the representatives of the Insurance Company testified that in response to the inquiry as to when the insured had last consulted a physician, what was the doctor's name, address, and what was the nature of the insured's illness, and date of the treatment, the insured replied that he had been last treated by "Dr. Jones" of Petersburg for a "cold" in 1935.

On the other hand, Mrs. Craven testified that in response to this question her father said that "it had been about ten

years except for a cold that he had been to a doctor for any illness."

There is no evidence whatsoever that at the time the application was taken the insured told or indicated to the soliciting agent that he had consulted and been treated by Dr. Showalter on April 30, 1947.

Thus, it is uncontradicted that within two years of the issuance of the policy the insured had consulted a physician and received treatment for a serious illness of the same nature as that of which he shortly thereafter died; that there had been no disclosure of such illness, consultation, or treatment to the Insurance Company, and consequently no endorsement of it on the policy; and that such illness, consultation and treatment were material to the risk. Promptly upon the discovery of such recent illness and treatment the Insurance Company elected to avoid the policy and offered to return the premiums to the beneficiary, in accordance with the terms of the provision.

It is elementary that an insurance company may embody in its policy terms, provisions and conditions not in violation of law and not inconsistent with public policy. In plain language it may limit or extend its coverage. *Darden* v. *North American Benefit Ass'n*, 170 Va. 479, 482, 197 S. E. 413, 415; *Mutual Benefit Health, etc., Ass'n* v. *Ryder*, 166 Va. 446, 455, 185 S. E. 894, 898.

The plain purpose of the "When Policy Is Voidable" provision is to require the applicant for insurance to disclose a recent illness or medical treatment. Upon such disclosure the insurance company may reject the risk, or by proper endorsement on the policy it may, despite such previous condition of the insured, afford protection for the full amount of the policy. To protect itself against the failure to disclose such material information the provision gives the company the right, in that event, to avoid the policy and return the premiums paid.

Such a provision is in no manner contrary to public policy and is the proper subject of contract between the

parties. By the terms of the policy the liability of the insurance company, under the circumstances stated, is limited to the amount of the premiums paid.

The application of the provision involves the principle of limited liability or excluded risk as distinguished from forfeiture of coverage for fraudulent misrepresentation in the procurement of the policy, or breach of warranty in the contract. No question of waiver or estoppel is involved.

While this court has not previously dealt with the precise situation it has frequently been before other courts, and without exception, so far as we can find, they have held that under such circumstances there is no liability on the insurance company beyond the amount of the premiums paid. Of the numerous cases dealing with the subject we shall refer only to a few.

In the recent case of *Adkins* v. *Kentucky Cent. Life, etc., Ins. Co.* (W. Va.), 48 S. E. (2d) 436, the court dealt with a situation quite similar to that with which we are now concerned. There the policy of industrial insurance contained an almost identical provision rendering the policy voidable at the election of the company for medical treatment within two years prior to the date of the policy and not endorsed thereon. The policy was issued on October 30, 1944, upon a written application in which the insured stated that in the past three years she had not suffered from illness, disease, or injury. After the death of the insured, on March 21, 1945, the proof of claim showed that she had been a patient at a hospital in April and June, 1943, and from May 23, 1944, until June 2, 1944, during which last period she had undergone a major operation. Suit on the policy was defended upon the identical grounds interposed by the Insurance Company in the case at bar.

Since the plaintiff introduced evidence which tended to show that the insured had, in fact, told the company's agent of her previous hospital experience, and that the agent had failed to note this in the application, the court held that

whether the policy had been procured by fraudulent misrepresentations was a jury question.

However, it held that since the policy contained no endorsement thereon showing the illness of the insured and her hospital experience related above, under the "When Policy Is Voidable" provision the insurance company was not liable beyond the amount of the premiums paid. The court disposed of the issue involved in this succinct language:

"* * * It stands uncontradicted in this record that the insured within two years prior to the date of the policy has consulted a physician and received treatment for disease, one treatment having been in the form of major surgery. The company has elected to void the policy and has tendered the beneficiary in this proceeding the sum of premiums paid thereunder. Of course in case of doubt the terms of an insurance policy are to be construed in favor of the insured, but clearly here there is no doubt. Neither is there the slightest issue of fact. The insurance company exercised its right of election under the terms of the policy without delay. That being so, it cannot be held liable." (48 S. E. (2d), pp. 437, 438.)

A leading and frequently cited case is *Souza v. Metropolitan Life Ins. Co.*, 270 Mass. 189, 170 N. E. 62. There a condition of the policy was that if "the Insured has * * * within two years before the date hereof, been attended by a physician for any serious disease or complaint, or, before said date, has had any pulmonary disease * * * unless such * * * previous disease is specifically recited in the 'Space for Endorsements' on page 4 * * * then, in any such case, the Company may declare this Policy void and the liability of the Company in the case of any such declaration or in the case of any claim under this Policy, shall be limited to the return of premiums paid on the policy, * * *."

Within six months of the date of the issuance of the policy the insured died. After his death it developed that less than two years before the issuance of the policy he had been

treated at a sanatorium for tuberculosis. No recital of such disease or treatment was endorsed on the policy.

In holding that the insurance company was not liable beyond the amount of the premiums paid, the court said: "The plaintiff was bound by the conditions of the policy although the attention of the deceased was not called to them. (Citing authorities.) The defendant was not bound to exercise the right to avoid the policy at any time. The question of avoidance was immaterial. The condition limited the liability of the insurer to a return of the premium if claim was made on the policy and the insured had had pulmonary disease before the date and this had not been recited." (170 N. E., p. 63.)

See also, *Champion* v. *Life, etc., Ins.* Co., 25 Ala. App. 101, 141 So. 363; *Gambill* v. *Metropolitan Life Ins. Co.*, 312 Ill. App. 538, 38 N. E. (2d) 827; *Chorney* v. *Metropolitan Life Ins. Co.*, 54 R. I. 261, 172 A. 392; *Winter* v. *Metropolitan Life Ins. Co.*, 123 N. J. L. 568, 9 A. (2d) 798; *Jacobs* v. *Metropolitan Life Ins. Co.* (La. App.), 39 So. (2d) 346; *Prince* v. *Metropolitan Life Ins. Co.*, 235 Mo. App. 168, 129 S. W. (2d) 5.

In *Jacobs* v. *Metropolitan Life Ins. Co., supra*, it was held (39 So. (2d), p. 348) that it was immaterial that the "When Policy Is Voidable" provision was found only in the policy and not in the application. The policy, the court said, and not the application, embodies the terms and agreement of the parties. See also, *Souza* v. *Metropolitan Life Ins. Co., supra*.

It is well settled that under such a clause the insurance company may assert its avoidance of the policy and the limitation of its liability to the amount of the premiums paid as a defense in an action on the policy. See *Souza* v. *Metropolitan Life Ins. Co., supra; Winter* v. *Metropolitan Life Ins. Co., supra; Popowicz* v. *Metropolitan Life Ins. Co.*, 114 Conn. 333, 158 A. 885; *Prince* v. *Metropolitan Life Ins. Co., supra*.

For these reasons we are of opinion that the judgment

complained of must be reversed and set aside and a final judgment entered for the defendant. The clerk of the lower court will be directed to pay to the plaintiff below the sum of $7.20, that being the amount which the defendant Insurance Company has tendered and paid into the registry of the court. The defendant Insurance Company will recover of the plaintiff below its costs both in the lower court and in this court.

*Reversed and final judgment.*