# Richmond

STERLING INSURANCE COMPANY v. WILLIE ROY DANSEY.

May 3, 1954.

Record No. 4181.

Present, Eggleston, Spratley, Buchanan, Miller, Smith and
Whittle, JJ.

The opinion states the case.

*John J. Wicker, Jr., E. Ballard Baker* and *Wicker, Baker &
Shuford*, for the plaintiff in error.

*Sutton & Causey*, for the defendant in error.

SMITH, J., delivered the opinion of the court.

■ This action was instituted on September 8, 1952, by
Willie Roy Dansey against the Sterling Insurance Company
on a policy of accident and health insurance to recover for
total disability. Sterling denied liability and defended on the
grounds that Dansey had, in his application for insurance,
made two material misrepresentations of fact, namely: (1) by
denying he had ever had diabetes when in fact he had suffered
from such disease, (2) by failing to disclose previous medical
treatment.

The trial resulted in a verdict and judgment in favor of
the insured for $1,535.00, the amount agreed to be due if
Dansey was entitled to recover under the terms of the policy.
To review that judgment, this writ of error was awarded
the insurance company.

No medical examination was required but the policy was
issued on a written application, which was signed by the
insured on November 26, 1948, and made a part of the
policy. An agent of the insurance company wrote the
answers to the questions in the application. The following
questions and answers are relevant here:

Question No. 15: "Have you ever had any of the follow-
ing: * * * (B) Cancer, diabetes, epilepsy, * * *? No."

Question No. 16: "Have you received medical or surgical
advice or treatment or had any local or constitutional disease,
not mentioned above, within the last five years?" Dansey
answered "yes"; gave the date as April or May 1947; the
nature of the treatment as a "check up"; and gave additional
information not called for in the application by inserting the
name and address of the attending physician as "Dr. William
Jordan, M. D., Richmond, Va."

Question No. 17: "Do you understand and agree that no insurance will be effected until a policy is issued to you? Yes."

Question No. 18: "Do you hereby apply to STERLING INSURANCE COMPANY for this policy to be issued solely and entirely in reliance upon the written answers to the foregoing questions, which you agree are true and correct to the best of your knowledge and belief, and do you agree that the company is not bound by any statement made by or to any agent unless written herein; and do you hereby authorize any physician or other person who has attended or may attend you to disclose any information thus acquired? Yes."

The insured, Dansey, also executed and delivered to the company's agent an "Authorization Form and Attending Physician's Report," directed to Dr. William Jordan and reciting that the insurance company would like more explicit information than Dansey was able to give concerning the illness or illnesses for which Dr. Jordan had treated him. It contained this specific request:

"To facilitate consideration of my case by the Medical Department of the Company, will you please make below a brief and general statement, giving the desired information with any other facts which would assist in the proper valuation?

"Please mail your reply in the enclosed addressed envelope. I shall greatly appreciate this courtesy on your part."

This special authorization and the application were delivered by the agent to his superior and a policy, dated November 30, 1948, was issued by the home office of the company in Chicago, Illinois, forwarded to the agent and delivered by him to Dansey upon payment of the initial premium. Thereafter, on June 8, 1951, Dansey had a brain hemorrhage and he has since been totally disabled.

Upon receipt of Dansey's claim, the company denied liability and tendered to him the sum of $251.20, the amount

of the premiums paid. The tender was refused and the present action followed.

The company promptly filed its special plea and grounds of defense, both of which were included in the same paper. In its special plea the company asserted that it was not liable because Dansey had in his application: (1) "knowingly made false statements relating to his health and physical condition, said false statements materially affecting the acceptance of the risk by the defendant," (2) "knowingly suffered from diabetes for some time prior to the time of the application, November 26, 1948, and had received medical treatment within the five years prior to November 26, 1948, other than that which he disclosed." The grounds of defense asserted that the company was not liable "because of false statements made by the plaintiff in the application for the policy, said false statements being untrue when made and being material to the risk assumed by the defendant under the policy."

The issue of whether Dansey had diabetes at or prior to the date of his application was submitted to the jury under Instruction No. 3,[1] to which there was no objection. This was a purely medical question on which the doctors gave conflicting testimony; however, they agreed that diabetes cannot be cured and can only be controlled by the use of insulin.

To support its allegations, the insurance company called Dr. William Jordan who testified that Dansey had diabetes prior to and after November 26, 1948, the date of his application for insurance. His conclusion was based primarily on several examinations made in December of 1946, which indicated that Dansey had an excess of sugar in his blood and urine. Most of these examinations were made at the Medical College of Virginia Hospital. In his next examination of Dansey, on March 14, 1947, Dr. Jordan found the urine and

---

[1] "The Court instructs the jury that in this case unless the defendant has clearly proved that Roy Dansey did, in fact, have diabetes at or prior to the date of the application in question, then he is entitled to recover under the policy for the disability sustained by him."

blood sugar normal. Then after a further examination on July 28, 1947, Dr. Jordan wrote Dansey that his blood sugar was "a slightly, tiny bit above normal—but I think is pretty satisfactory * * * certainly, the sugar is not causing you to feel badly." Dr. Jordan recommended that Dansey take insulin which is the usual treatment for diabetes, suggested a diet, and gave him a manual on the care of diabetes, but he never told Dansey prior to November 26, 1948 that he was suffering from diabetes. Subsequent to the brain hemorrhage in June of 1951, Dansey was examined by Dr. Jordan on two occasions.

Dr. Douglas G. Chapman, who gave Dansey a physical examination and electrocardiogram on May 29, 1951, in a written statement read by agreement as a part of the evidence, said he found Dansey had diabetes in May of 1951, and that he was told by Dansey that Dr. Jordan had treated him three years for diabetes.

On the other hand, Dr. W. H. Hosfield, Dansey's family physician, testified that Dansey did not have diabetes. His conclusion was based on five urinalyses, one of which was made in the summer of 1948, prior to the date of the application, and the other four of which were made after his hemorrhage in 1951.

Dansey himself testified that if he ever had diabetes, he never knew it; that he was never told prior to the date of his application that he had diabetes; and that he did not tell Dr. Chapman that he had been treated by Dr. Jordan for diabetes. Also, his wife testified that for more than a year she had tested her husband's urine every day in accordance with Dr. Hosfield's instructions and had found no sugar in it; and that at the time of the trial her husband had not been on any diet or taken any insulin for more than a year.

Thus, there is conflicting evidence as to whether Dansey had diabetes, but even if he did have diabetes on or prior to the date of his application, the evidence was amply sufficient to justify the jury in finding that he was ignorant of the fact.

We now come to the company's contention that the

trial court erred in giving the jury Instructions Nos. 1 and 2, and in refusing to give its requested Instruction B.[2]

Instructions 1 and 2 told the jury that in order for the insurance company to defeat recovery on the policy under the pleadings in this case it must prove that Dansey "knowingly made a false statement in answer to questions 15 and 16 in the application." Instruction B, which was refused, would have told the jury that if Dansey "had diabetes at any time prior to the application" he could not recover on the policy. Under this instruction the jury would have been required to find a verdict for the insurance company regardless of whether misstatements were made "knowingly or innocently," which is the position contended for by the company.

To support its position, the insurance company relies on Code, § 38.1-336,[3] and alleges that this statute "states the pub-

[2] Instruction No. 1: "The court instructs the jury that if you believe from the evidence that the answers given by Willie Roy Dansey in his application for insurance to questions 15 and 16 were true and correct to the best of his knowledge and belief then the Sterling Insurance Company has failed to sustain its defense set out in Special Plea No. 1 that Willie Roy Dansey knowingly made false statements in the application relating to his health and physical condition and you will as to this find for the plaintiff, Willie Roy Dansey."

Instruction No. 2: "The court instructs the jury that in order to defeat recovery on the insurance policy involved in this action on the ground that the plaintiff made false statements in his application for insurance, the burden is upon the defendant to clearly prove that the plaintiff, Willie Roy Dansey, knowingly made a false statement in answer to question 15 or 16 in the application and unless the defendant has clearly proven that Willie Roy Dansey did knowingly make a false statement in answer to either of these questions, then you will on this issue find a verdict in favor of the plaintiff, Willie Roy Dansey."

Instruction B: "The court instructs the jury that the statement in the application shown in evidence in this case that the applicant, Willie Roy Dansey, had never had diabetes was material to the risk assumed by the defendant company under the policy, and if you believe from the evidence that the insured, Willie Roy Dansey, had diabetes at any time prior to the date of the application, the plaintiff can not recover in this action."

[3] "When answers or statements of applicant not to bar recovery on policy.—All statements, declarations and descriptions in any application for a policy of insurance or for the reinstatement thereof shall be deemed representations and not warranties, and no statement in such application or in any affidavit made before or after loss under the policy shall bar a

lic policy of this Commonwealth as to when a policy may be voided because of misstatement in the application. The company can not make the validity of the policy depend upon any other factors—nor can the applicant." It further asserts that the "statute itself is a part of the contract" and that the language in the application with "reference to true and correct to the best of knowledge does no more than. vouch for the good faith of the applicant."

Dansey, on the other hand, contends that the policy cannot be avoided since the answers given in the application were in accordance with the agreement he made with the company, being true and correct to the best of his knowledge and belief. He further insists that the "primary question under the pleadings in this case was whether or not the plaintiff knew that he had diabetes at any time prior to November 26, 1948"; and that *Gilley* v. *Union Life Ins. Co.*, 194 Va. 966, 76 S. E. (2d) 165, "is a full and complete answer to the position taken by the Insurance Company."

It is well settled that policies of insurance are to be liberally construed in favor of the insured, but if they are plain and clear and not in violation of law or inconsistent with public policy, we are bound to adhere to their terms, considered and construed as a whole, as the authentic expression of the intention of the parties. We have neither the duty nor the power to write contracts for people. The function of courts is to construe the terms, conditions and provisions of contracts which lie within the domain of ambiguity. *E. g., Peoples Life Ins. Co.* v. *Craven*, 190 Va. 124, 56 S. E. (2d) 50; *Darden* v. *North Amer. Ben. Ass'n*, 170 Va. 479, 197 S. E. 413; *Collins* v. *Metropolitan Ins. Co.*, 163 Va. 833, 178 S. E. 40.

Dansey was told the nature and effect of his answers in question No. 18, which informed him the policy would be issued "solely and entirely in reliance upon the written

recovery upon a policy of insurance, or be construed as a warranty, anything in the policy to the contrary notwithstanding, unless it be clearly proved that such answer or statement was material to the risk when assumed and was untrue."

answers to the foregoing questions, which you agree are true and correct to the best of your knowledge and belief, * * *." Instead of relying on the statute, the company chose to provide that answers to the questions prepared by it must be "true and correct to the best of your knowledge and belief."

The company emphasized that its agreement was to this effect by asserting in its special plea that "the plaintiff knowingly made false statements relating to his health and physical condition," and that the policy "would not have been issued to the plaintiff had the defendant known of the true physical condition of the plaintiff, which knowledge was denied the defendant by the wilful falsification of the plaintiff in the application." The special plea further alleged that "the plaintiff had knowingly suffered from diabetes for some time prior to the time of the application, November 26, 1948," and concluded that "the defendant expressly requests a reply to this special plea."

In his reply to the special plea, Dansey said: "The plaintiff denies each and every allegation in the special plea that he knowingly made false statements relating to his health and physical condition in the application for the insurance policy on which this action is based and the plaintiff denies that he had knowingly suffered from diabetes for some time prior to November 26, 1948, * * *."

The company, however, says Code, § 38.1-336 precludes us from giving effect to the language of the application.

In *Inter-Ocean Ins. Co.* v. *Harkrader*, 193 Va. 96, 100, 67 S. E. (2d) 894, we said: "The language of section 38-7 [now Code, § 38.1-336] is clear and unambiguous. We have had frequent occasion to apply it, and have uniformly held that a misrepresentation of facts material to the risk voids the insurance contract." See also, *Ambrose* v. *Acacia Mut. Life Ins. Co.*, 190 Va. 189, 56 S. E. (2d) 372; *Mutual Benefit, Etc., Ass'n* v. *Alley*, 167 Va. 144, 187 S. E. 456; *Flannagan* v. *Northwestern Mutual Life Ins. Co.*, 152 Va. 38, 146 S. E. 353; *North River Ins. Co.* v. *Atkinson*, 137 Va. 313, 119 S. E. 46; *Talley* v. *Met. Life Ins. Co.*, 111 Va. 778, 69 S. E. 936.

Although we have had frequent occasion to construe and apply Code, § 38.1-336, we have not previously dealt with the precise language used in the application here involved. Under such circumstances, we think the following statement found in 29 Am. Jur. §564, p. 458, is applicable: "Where the answers [in an application for insurance] are stated to be *true to the best knowledge and belief of the applicant,* or some equivalent expression is used, the cases hold, almost without exception, that an incorrect statement innocently made in the belief in its truth will not avoid the policy, although there is also an agreement that any untrue or fraudulent statement shall avoid the policy." (Italics supplied). See also, *Stanyan* v. *Security Mut. Life Ins. Co.,* 91 Vt. 83, 99 A. 417; *Lakka* v. *Modern Brotherhood,* 163 Iowa 159, 143 N. W. 513; *Hann* v. *National Union,* 97 Mich. 513, 56 N. W. 834.

We do not agree with Dansey that this case is controlled by the *Gilley* case, *supra.* The cases are distinguishable because of the particular language used in the application here, on which we base our present decision.

The plain language used by the parties in their agreement is not in violation of any law nor inconsistent with public policy. Forfeiture of an insurance policy is not favored because the insurance contract which in its nature is complex and difficult for the layman to understand, is generally drawn by experts who know and can anticipate the bearing and possible complications of every contingency. It is, therefore consistent with public policy to permit the insurer and insured to enter into an agreement, the validity of which is based on knowledge and belief in the statements made by the insured rather than on the literal truth thereof. Indeed, our research leads us to the conclusion that the insurer here could and did make a more favorable agreement with the insured than the statute prescribed. *Ambrose* case, *supra.* See also, Code, § 38-372 (now § 38.1-404). In this connection we note that the legislature in 1952 enacted Code, §§ 38.1-349, 38.1-350 and 38.1-356, pertaining to accident and sickness in-

surance, all of which provide that if the insurer does not include the provisions therein contained then he may substitute therefor other provisions which are not "less favorable in any respect to the insured or beneficiary."

One of the purposes of Code, § 38.1-336, and similar statutes which have been enacted in many of the states, is to relieve against the rigorous consequences of the common law rule that answers to interrogatories in applications for insurance imply that the subject matter of the questions and answers is material, and that if such answers are not true the policy is voidable. *Union Central Life Ins. Co.* v. *Pollard*, 94 Va. 146, 26 S. E. 421; *Jefferson Standard Life Ins. Co.* v. *Clemmer*, 79 F. (2d) 724; 29 Am. Jur. § 545, pp. 440, 441.

The statute does not say that the parties cannot enter into an agreement more favorable to the insured, and it was not so decided in *Union Indemnity Co.* v. *Dodd*, 21 F. (2d) 709, as contended by the insurance company. True, it was there said that "statutes of this character are mandatory and control the nature and terms of the contract into which the parties have entered, and can not be set aside by the company, even with the assent of the assured." But this meant simply that the insured cannot waive the protection given him by the statute. This statement is, therefore, not inconsistent with the views we have herein expressed.

Hence, even though we read the statute into this application, the policy may not be forfeited unless the answers given in the application were knowingly false as agreed in the application. The words, "which you agree are true and correct to the best of your knowledge and belief," cannot be eliminated from the application, but must be given effect. That is precisely what the trial court did when it granted Instructions 1 and 2, which were not only in the language of the issues made by the pleadings, but were in accordance with the plain language of the agreement in the application. Instruction B was inconsistent therewith and was therefore properly refused.

Finally, we turn to the contention made by the in-

surance company that Dansey did not make a full and frank disclosure in his answer to question No. 16, which asked whether he had received "medical or surgical treatment * * * within the last five years." This claim is based on the fact that Dansey was in the hospital under the care of Dr. Jordan from December 8 to December 13, 1946. He was not, however, confined in the hospital, but "was up town as much as he was in the hospital."

Question 16 did not ask Dansey whether he had been in the hospital, but it asked whether he had received "medical or surgical treatment" within the preceding five years. As previously stated, Dansey answered "yes," gave the nature of the treatment, "check up," and then gave additional information not called for on the application by inserting the name and address of the physician who had treated him, "Dr. William Jordan, M. D., Richmond, Virginia."

Not only did Dansey give the name and address of the physician who had treated him and which was not called for in the application, but he executed and delivered to the agent a special "Authorization Form and Attending Physician's Report." This form was directed to Dr. William Jordan reciting that the Sterling Insurance Company "would like more explicit information" than Dansey was able to give it concerning the illness for which Dr. Jordan had treated him. The agent for the company testified in connection with this form as follows:

"Q. Did you have instructions from the company that, whenever an applicant stated he had had medical treatment within five years, to secure one of these application blanks in order for you to get further information from the physician?

"A. Yes, sir.

"Q. And you did that in this case?

"A. I did."

That Dansey did what would reasonably be expected of an applicant is indicated by the testimony of the chief underwriter for the company:

"Q. When an applicant has been to a physician for advice

or treatment and the physician has not told him what, if anything, was wrong with the applicant, what more can the applicant do in his application for insurance than give the Company the name and address of the physician whom he consulted?

    *        *        *        *        *        *        *

"A. In my opinion, the name and address of the attending physician or surgeon should be so stated in the application."

The evidence warranted the jury in finding that Dansey made a full and frank disclosure when he termed his treatment a "check up"; gave the name and address of his physician; and in addition, executed an authorization for "further and more explicit information" than he was able to give.

For the reasons herein stated the judgment is affirmed.

*Affirmed.*