Julie D. KNOWLES, Appellee,

v.

The MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Appellant.

No. 85–1275.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 9, 1985.

Decided April 23, 1986.

Rehearing Denied July 7, 1986.

Barrett W. Freedlander (Niles, Barton & Wilmer, on brief) for appellant.

Dale A. Cooter (Linda G. Griffith, Cooter & Gell, on brief) for appellee.

Before HALL and CHAPMAN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

PER CURIAM:

This action in the diversity jurisdiction was brought to collect the proceeds of a life insurance policy. By agreement, it was tried before a magistrate who submitted two special interrogatories to the jury. The jury answered the interrogatories, finding that the defendant's agent had apparent authority to accept a postdated check for the first premium but that the insured had not unconditionally accepted the insurance policy. Judgment for the defendant would have followed upon the finding of conditional delivery, but after the discharge of the jury, the magistrate determined that the plaintiff had not been given notice of the conditional delivery defense and that the issue had been unfairly tried. He struck the jury's answer to that interrogatory and entered judgment for the plaintiff.

On the defendant's appeal, we affirm.

### I.

On December 17, 1979 Charles Spell filed a written application for a $200,000 term life insurance policy with Mutual Life Insurance Company of New York and paid a premium of $53.39. A policy as applied for was issued but was not delivered, apparently because of Spell's uncertainty that he wanted it. MONY's agent, David Fleming, obtained a check with which to refund the $53.39 paid by Spell in December 1979, and, on the evening of May 28, 1980, he called his friend Spell to arrange to deliver the refund check. He found that Spell was still interested in taking out the insurance, and the two met at Spell's house. It turned out that Spell wanted the term insurance, but he also wanted the right to convert it to a whole life policy with premiums based on age 39. For that reason, he wanted the policy with its December 1979 date. Fleming told him that he would have such a conversion right, but Spell insisted that he wanted an official letter from MONY confirming his conversion right.

The conversation then turned to payment of the first premium of $373.73. Spell stated that he had only $282 in his bank account, but it was agreed that he would pay the initial premium by giving Fleming a check in that amount, endorsing MONY's refund check back to MONY, and paying the difference in cash.

As he was writing the check, Spell said that he would like to postdate it to June 7, the day after his next anticipated payday. According to Fleming, he responded "Do us both a favor and date it today." He explained that the check could not go through MONY's channels and be presented at Spell's bank until well after June 7. Again according to Fleming, Spell said that he wished to maintain a balance in his checking account to avoid a service charge, to which Fleming responded that he would pay the service charge if one was imposed on Spell. He said that Spell then said "O.K." and went back to writing the check.

The check was completed, postdated as of June 7, and placed by Spell upon a pillow between the two men.

Fleming delivered the insurance policy to Spell and then applied himself to the completion of a form to change the beneficiary from Spell's son to his fiancee, the plaintiff.

The check was accepted without comment by Fleming, though Fleming said he

did not look at it and was unaware until later that it was postdated.

Actually Spell had less than $282 in his bank account on May 28. He had issued other postdated checks in anticipation of the June 6 deposit of his monthly salary.

Spell was fatally shot during the night of May 31–June 1.

## II.

The defendant's defense that the insurance policy had not been accepted by Spell is based upon Spell's insistence that he have a letter confirming his conversion rights as explained to him by Fleming.

At a pre-trial conference, the defendant's defenses were said to be that a postdated, or worthless, check is not a premium payment, and that Spell knew that Fleming had no actual authority to accept such a check. Several days later, the magistrate received a letter from counsel for the defendant supplementing its proposed jury instructions and amending its request for special interrogatories to put before the jury its claim of conditional delivery.

At the opening of the second day of trial, after the close of evidence but before argument to the jury, the plaintiff objected to the conditional delivery defense, claimed surprise, and asked that the question not go to the jury. The magistrate, under the mistaken belief that the plaintiff's lawyer had received a copy of the letter requesting submission of the interrogatory under appropriate instructions, overruled the objection. At the hearing on the post-trial motion, the magistrate was correctly informed that the plaintiff's lawyer was unaware of the conditional delivery defense until after the opening of the trial. The magistrate then struck the jury's answer to the second interrogatory and, upon its finding that Fleming had apparent authority to accept a postdated check, entered judgment for the plaintiff.

■ Under these circumstances, we think the magistrate reasonably determined that the plaintiff was unfairly surprised by the assertion of the conditional acceptance defense at trial and that she had no reasonable opportunity to prepare to meet it. Having made that determination, it was well within his discretion to alter the judgment under Fed.R.Civ.P. 59(e).

■ The plaintiff's post-trial motion was for relief under Rule 60(b), but it had been made within ten days after the entry of judgment and was appropriately treated as a motion made under Rule 59(e). *Dove v. Codesco*, 569 F.2d 807, 809 (4th Cir.1978).

## III.

■ The question of Fleming's apparent authority to accept the postdated check in part payment of the first premium was submitted to the jury under proper instructions, and we must accept the jury's finding of apparent authority since there is an evidentiary basis for it.

Spell and Fleming were friends. Some years before, Spell had purchased a policy through Fleming when Fleming was representing another insurance company. Even if the jury accepted most of Fleming's version of the events of the evening of May 28, Fleming did not tell Spell that he had no authority to accept a postdated check; he asked that Spell not postdate the check as a "favor" to both. After the check was written and placed on the pillow for Fleming to pick up and examine, some time elapsed before Fleming's departure. The jury reasonably could have found that before delivering the insurance policy to Spell, Fleming would have examined the check and would have noticed the date, since the dating of the check had been a matter of active discussion. Finally, the jury might reasonably have believed that if Spell had known that Fleming had no authority to accept a postdated check and could not deliver the policy until the first premium had been fully paid, he would have made other arrangements for the payment of that premium and obtained effective delivery of the policy before his death on the night of May 31–June 1.

## IV.

Before trial, MONY's principal defense seems to have rested upon the position that there had been no payment of the first premium during Spell's lifetime. This is based on two subsidiary contentions that delivery of a check that is worthless or postdated is not payment.

It is not now clear that the check was worthless. There were insufficient funds in Spell's bank account to cover it when it was issued and given to Fleming on May 28, but it could not have been presented before June 7. If Spell had lived and made a deposit of his salary check on June 6 in his accustomed manner, there is no indication that the check would not have been honored when presented on June 7 or later.

There is no doubt, however, that it was postdated. It was like a note, a promise to pay on or after June 7. We may thus accept MONY's premise that it should not be regarded as a present payment on May 28, or at any time during Spell's lifetime.

The magistrate refused to permit MONY to present that defense. He held that MONY was estopped to claim nonpayment by the recital in the policy of payment. He relied upon an old Maryland case, *Consolidated Real Estate & Fire Insurance Co. v. Cashow,* 41 Md. 59 (1874).

In *Consolidated,* an insurer of a building against loss by fire had reinsured half the risk. After loss of the building by fire, the reinsurer refused payment of its proportion of the loss upon the ground that its premium had not been paid before the loss. The Maryland Court of Appeals held that it was estopped to claim nonpayment because its policy of reinsurance contained a recital that the premium had been paid.

The case is a hoary one, but nothing in subsequent decisions in the Maryland Court of Appeals suggests that that court would not apply the same rule today. Nonpayment of the premium would not foreclose MONY's claim for the amount of the premium, but the recital in the policy does foreclose MONY's claim after Spell's death that the policy was never effective. Since Fleming's delivery of the policy to Spell was admittedly unconditional, the policy's recital of "the payment of premiums as provided" forecloses a claim of invalidity for nonpayment.

MONY argues that the "as provided" language in the recital refers to the "plain stipulation" that the premium be paid during Spell's lifetime. This, however, is simply the nonpayment argument that the *Consolidated* case prevents.

The defendant contends that Spell had defrauded Fleming and the defendant and that his fraud should except this case from the *Consolidated* rule. The claim of fraud is premised first upon the contention that Spell knew Fleming was unauthorized to accept a postdated check, but that contention is inconsistent with the jury's finding. If Spell reasonably believed that Fleming had the authority to accept a postdated check, his delivery of a postdated check to Fleming could not have been intended to defraud him. Spell's misrepresentation of the balance in his bank account on May 28 is simply irrelevant. The postdated check could not have been presented before June 7, and there is nothing to suggest that it would not have been good on that date if Spell had lived.

## V.

Finally, the defendant objects to the award of prejudgment interest.

The policy, itself, provided for the payment of its face amount together with interest on the unpaid balance for up to two years. MONY contends that it should not be held liable for interest for a longer period than its contract required.

Maryland law, however, gives a trial judge the discretionary right to award prejudgment interest to place the injured party in a breach of contract case in the same position she would have occupied had the defendant not broken its promise. Here, the defendant's wrongful refusal to pay deprived the plaintiff of the use of the insurance proceeds for more than the two years of MONY's contractual commitment.

It was an appropriate situation for the magistrate to exercise his discretion as he did. *See I. W. Berman Properties v. Porter Brothers*, 276 Md. 1, 19–20, 344 A.2d 65, 75–77 (1975); *Brethren Mutual Insurance Co. v. Filsinger*, 54 Md.App. 357, 364–66, 458 A.2d 880, 884–85 (1983).

## VI.

For the foregoing reasons, the judgment is affirmed.

AFFIRMED.