**Patsy RUSH, Plaintiff,**

v.

**HARTFORD MUTUAL INSURANCE CO., Defendant.**

**Civ. A. No. 86–0179–A.**

United States District Court, W.D. Virginia, Abingdon Division.

Feb. 5, 1987.

Bernard S. Via, Bristol, Va., for plaintiff.

Brewster Rawls, Abingdon, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

The plaintiff, Patsy Rush (Rush), filed this action on July 15, 1986 to recover the proceeds of an insurance policy with the defendant, Hartford Mutual Insurance Company (Hartford), for a fire that occurred on April 26, 1985. The insured property was a frame house located adjacent to U.S. Route 19 near Hansonville in Russell County, Virginia. The house was approximately fifty (50) years old and contained ten (10) rooms with total floor space of 1700–1800 square feet. A large lot was adjacent to the house, but Rush treated the house and lot as separate rental units. On or about July 15, 1982 Rush obtained insurance coverage on the house from Hartford, having contracted through Highlands Insurance Service. The policy was a dwelling policy and stated: "We cover[ ] the dwelling on the described location, used principally for dwelling purposes; ...." Rush renewed the coverage annually. Prior to January, 1985, Rush rented the house to a number of tenants all of whom used the house for residential purposes. In January, 1985, Rush rented the house to Dry Bulk, Inc. (Dry Bulk) for $150 per month as it had already rented the adjacent lot for $200 per month. Dry Bulk, a trucking company, used the lot for parking and as a maintenance area for its tractors, trailers and other equipment. Dry Bulk apparently rented the house for security purposes and began repairs and renovations at its own expense in January, such repairs continuing until the fire. It intended that one of its employee-drivers reside in the house

after they remodeled it. This employee would primarily use the kitchen, a bedroom and a bathroom but would have full access to and use of all parts of the house. As of April 26, 1985 no employee regularly resided in the house although some employees periodically spent the night there. Dry Bulk also used a part of the premises as a business office—receiving calls and dispatching trucks—and maintained business records of its operations there. Dry Bulk stored other material in the house, including tires in the basement.

A fire, apparently accidental in origin, totally destroyed the house on April 26, 1985 causing damage of $29,242.75. After submission of her claim, Hartford denied coverage claiming that the use of the house had changed from that of a dwelling to that of a business and, therefore, Rush had failed to comply with the insurance contract. Rush seeks a determination that the policy provided coverage for the fire loss and that Hartford is liable for the amount of $29,242.75. In addition, Rush seeks prejudgment interest, attorney fees and damages for emotional distress resulting from Hartford's failure to provide coverage under the policy. The parties have stipulated to the facts and submit this case for decision by summary judgment. Both parties assert that the decision turns upon whether the house was in fact in use as a dwelling. Even though this is a factual determination, the parties contend that no issues of disputed facts remain. This court has jurisdiction by virtue of 28 U.S.C. § 1332.

## OPINION

Both Rush and Hartford claim that the decision in the case turns upon a finding of whether the insured property was or was not being used as a dwelling during the time of the fire. However, this court concludes that it is not necessary to decide whether the insured was using the property as a dwelling house at the time of the fire; it is only necessary to determine if the building was being used as a dwelling at the time of the issuance of the policy. The

language in the policy stating "used principally for dwelling purposes" is not a warranty but a representation. This distinction is important because a warranty in a policy acts as a condition and failure to abide by the condition precludes any recovery while a representation is merely a descriptive term in the policy and failure to conform to the representation does not preclude recovery.

This construction of warranty/representation in a policy is not to be confused with warranty/representation in an application for insurance. Virginia has enacted a statutory provision which provides that "[a]ll statements, declarations and descriptions in any application for an insurance policy or for reinstatement of an insurance policy shall be deemed representations and not warranties." Va.Code § 38.2–309.[1] While the Virginia Supreme Court has held that this section applies only to the application for the policy, and not for the policy itself, *North River Insurance Co. v. Atkinson*, 137 Va. 313, 315, 119 S.E. 46, 47 (1923), the rationale behind § 38.2–309 is applicable to the situation at hand.

The rationale behind § 38.2–309 and its predecessors is clearly stated in *Sterling Insurance Co. v. Dansey, infra.*

> Forfeiture of an insurance policy is not favored because the insurance contract which in its nature is complex and difficult for the layman to understand, is generally drawn by experts who know and can anticipate the bearing and possible complications of every contingency. It is, therefore, consistent with public policy to permit the insurer and insured to enter into an agreement, the validity of which is based on knowledge and belief in the statements made by the insured rather than on the literal truth thereof.

*Sterling Insurance Co. v. Dansey*, 195 Va. 933, 940, 81 S.E.2d 446, 451 (1954). *See Harrell v. North Carolina Mutual Life Insurance Co.*, 215 Va. 829, 830, 213

---

1. The language of § 38.2–309 has changed almost none since adoption of a similar statute in the early 1900's. Therefore, use of § 38.2–309 in this opinion refers to § 38.2–309 or its appropriate predecessor.

S.E.2d 792, 794 (1975). Whether by statute or decisional law, the law of Virginia disfavors warranties so as to prevent and decrease forfeiture. Pre–§ 38.2–309 law was clear that the parties are not held to have entered into warranties unless they clearly indicate. *Lynchburg Fire Insurance Co. v. West,* 76 Va. 575 (1882); *Morotock Insurance Co. v. Fostoria Novelty Co.,* 94 Va. 361, 26 S.E. 850, 851 (1897). This rule of law is not just Virginia law, but universally accepted law. "A condition must be spelled out with sufficient precision [so] that men of average intelligence reading the policy would ascribe to it the meaning urged by the insurer." *Korzinek v. Postal Life Insurance Co.,* 224 F.Supp. 1001, 1007 (S.D.N.Y.1964).

A statement in an insurance policy that the building insured is a residence or dwelling house, or is used and occupied as such, is as a rule regarded as a matter of representation or description only, and even where from the stipulations of the contract the statement amounts to a warranty, such warranty is not generally regarded as a continuing one, but only a warranty of the situation at the time of the issuance of the insurance.

44 Am.Jur.2d *Insurance* § 1209 (1982) (footnotes omitted).

*Insurance Company of North America v. Howard, infra,* a Ninth Circuit case illustrates these points vividly. The policyholder, Howard, insured her home. The policy provided:

I. COVERAGES

Coverage A. Dwelling. Coverage A insures, subject to Exclusions and limitations stated herein, the described residence owned and occupied by the insured exclusively for residential purposes

. . . .

Howard moved from her home and leased it to tenants. The home burned two weeks later. The insurance company denied coverage contending that because Howard had rented her home she failed to conform to the policy. The insurance company's decision was two-fold; first that she failed to occupy the premises and second that she no longer used the house for residential pur-

poses once she leased it, but that she used it for business purposes. The Ninth Circuit held that the provision described the residence covered at the time of the issuance of the policy and did not impose a condition, requiring the policyholder to continue to live in the residence. *Insurance Company of North America v. Howard,* 679 F.2d 147, 148 (9th Cir.1982).

[A] description of a house in a policy of insurance, as 'occupied by' the insured, is a description merely and is not an agreement that the insured should continue in the occupation of it. *Joyce v. Marine Insurance Co.,* 45 Me. 168; *O'Neil v. Buffalo Fire Insurance Co.,* 3 N.Y. 122. A statement in an insurance policy that the property is occupied by the insured as a dwelling for himself and family, is not a warranty that it shall continue to be so occupied but is only a warranty of the situation at the time the insurance is effected. *German Insurance Co. v. Russell,* 65 Kan. 373, 69 P. 345, 58 L.R.A. 234.

*Howard,* 679 F.2d at 149, *quoting, Reid v. Hardward Mutual Insurance Co. of Carolinas,* 252 S.C. 339, 166 S.E.2d 317, 321 (1969).

Because the language in the policy in question is no more clear, explicit, or precise than the language in the policy in *Howard,* this court finds, as did the *Howard* court, that the policy terms were descriptive terms rather than a warranty. If an insurance company wishes to have a homeowner's policy terminate upon rental of his/her home for business related use, the insurance company must provide explicitly and unambiguously in the policy of insurance. The mere statement that the insured property is a dwelling used principally for dwelling purposes is not clear and explicit enough to create a warranty. As such the terms are only a representation or description.

While warranties are always a part of the complete contract, representations precede, are collateral to, and are not necessarily a part of the contract. A warranty is a statement of a fact, the absolute truth

of which determines the validity of the contract. A warranty is an agreement in the nature of a precedent condition with which the insured must strictly comply. The validity of a representation on the other hand does not depend upon the literal truth of the assertion. A warranty must be literally true, while a representation need be only substantially true. *North River Insurance Co. v. Atkinson,* 137 Va. 313, 315, 119 S.E. 46, 47 (1923). The representations were completely true at the time of issuance of the policy. The owner was using the building exclusively for residential dwelling purposes. The alleged departure from the policy terms occurred sometime after the policy became effective, but this does not affect the validity of the insurance policy. *Zurich General Accident & Liability Insurance Co., Ltd. of Zurich, Switzerland v. Flickinger,* 33 F.2d 853, 856 (4th Cir.1929).

> [I]t is well settled that statements in an application for a policy which is renewed relate to the time when the original policy was issued; and, if they were true at that time, it is no defense that they may not have been true later or at the time of renewal.

*Id.* Because the provisions were representations rather than warranties, a subsequent failure to conform to the provisions does not invalidate the policy. The plaintiff may recover even if the building was no longer used as a dwelling at the time of the fire. As a matter of law the plaintiff is entitled to recover the proceeds of the policy because the policy contained only representations and not warranties and the representations were entirely and completely true at the time of issuance of the policy.

■ Irrespective of the foregoing analysis, this court finds that the insured property was in use as a dwelling at the time of the fire. The evidence is undisputed that some of Dry Bulk's employees lodged there. An insurance policy is a contract and a court should liberally construe all ambiguities in the policy in favor of the insured and against the drafter of the policy. *Quensenberry v. Nichols,* 208 Va. 667, 670, 159 S.E.2d 636, 640 (1968); *First American Title Insurance Co. v. Sea-*

*board Savings and Loan,* 227 Va. 379, 384, 315 S.E.2d 842, 845 (1984). The policy is unambiguous in that the policyholder was to use the premises principally for dwelling purposes. However, the policy is. unclear and ambiguous as to what constitutes "principally used as a dwelling." The tenants used at least three rooms for dwelling purposes, while they used one room and part of the basement for business purposes.

The ambiguities created by the policy's language are construed in favor of Rush and the fact that Dry Bulk employees used at least three rooms in the house for dwelling purposes as opposed to one room for business purposes satisfies the terms of the policy. This court finds that the insured property was being used principally as a dwelling at the time of the fire.

■ Rush seeks damages for emotional distress resulting from Hartford's failure to provide coverage under the policy. She asserts that because this court finds that Hartford breached its contractual duty to pay her the proceeds of the policy, she can recover damages for emotional distress. However, damages for breach of contract in Virginia are customarily limited to the pecuniary loss sustained. *Kamlar Corp. v. Haley,* 224 Va. 699, 704–706, 299 S.E.2d 514, 517–518. This rule is followed when a plaintiff has only an action for breach of contract and does not have the ability to elect whether he/she will proceed in tort or contract. *Id.* at 707; 299 S.E.2d at 518. As Rush has no tort action, she may not recover damages for emotional distress.

■ Rush also seeks to recover attorney fees incurred in litigating this claim. Va. Code § 38.2–209 controls her ability to recover and provides in pertinent part:

> Notwithstanding any provision of law to the contrary, in any civil case in which an insured individual sues his insurer to determine what coverage, if any, exists under his present policy or bond or the extent to which his insurer is liable for compensating a covered loss, the individual insured shall be entitled to recover from the insurer costs and such reason-

able attorney fees as the court may award. However, *these costs and attorney's fees shall not be awarded unless the court determines that the insurer, not acting in good faith, has either denied coverage or failed or refused to make payment to the insured under the policy.* (emphasis added.)

Because Rush has presented no evidence that Hartford acted in bad faith and because this court concludes that Hartford's refusal to pay was substantially justified in that the legal and factual issues were unsettled, Hartford's actions do not fall within the scope of § 38.2–209, therefore, Rush may not recover attorney fees.

■ Lastly, this court addresses Rush's request for prejudgment interest. Virginia law applies to questions involving prejudgment interest in diversity cases. *United States v. Dollar Rent A Car Systems, Inc.,* 712 F.2d 938, 940 (4th Cir.1983), and Virginia Code Section 8.01–382 gives the jury or judge discretion in awarding prejudgment interest.[2] *See Pierce v. Martin, for the Benefit of Commercial Union Insurance Co.,* 230 Va. 94, 334 S.E.2d 576 (1985); *Eascalco, Inc. v. Caulfield,* 220 Va. 475, 259 S.E.2d 821 (1979). As such, this court awards prejudgment interest at a rate of 12.0%[3] from April 29, 1985, the date that the policyholder filed her claim with Hartford. The awarding of prejudgment interest is a proper exercise of this court's discretion. *Kerr v. State Farm Fire and Casualty, Co.,* 731 F.2d 227, 229 (4th Cir. 1984); *Knowles v. Mutual Life Insurance Co. of New York,* 788 F.2d 1038, 1041 (4th Cir.1986).

The Clerk is directed to send certified copies of this Memorandum Opinion to counsel of record.

**2.** Va.Code § 8.01–382 provides:

**Verdict, judgment or decree to fix period at which interest begins; judgment or decree for interest.**—Except as otherwise provided in § 8.3–122, in any action at law or suit in equity, the verdict of the jury, or if no jury the judgment or decree of the court, may provide for interest on any principal sum awarded, or any part thereof, and fix the period at which the interest shall commence. The judgment or decree entered shall provide for such interest until such principal sum be paid. If a judgment or

## ORDER

In accordance with the Memorandum Opinion entered this date, this court hereby ORDERS that the defendant, Hartford Mutual Insurance Company, pay the plaintiff, Patsy Rush, $29,242.75 under its insurance policy for the fire of April 26, 1985 that destroyed the insured property. This court further ORDERS that the defendant pay prejudgment interest at a rate of 12.0% from April 29, 1985 until this date; post-judgment interest at a rate of 5.75% from this date, computed daily and compounded annually, until paid in full; and the costs of this action. Plaintiff's claims for attorney's fees and damages for emotional distress are hereby DENIED.

decree be rendered which does not provide for interest, the judgment or decree awarded shall bear interest from its date of entry, at the rate as provided in § 6.1–330.10, and judgment or decree entered accordingly; provided, if the judgment entered in accordance with the verdict of a jury does not provide for interest, interest shall commence from the date that the verdict was rendered.

**3.** *See* Va.Code § 6.1–330.10.