## Richmond

OLD REPUBLIC LIFE INSURANCE COMPANY v. MILDRED S. BALES, ETC..
ET AL.

April 23, 1973.

Record No. 8050.

Present, All the Justices.

*William L. Shapero; Jerome B. Friedman (Shapero, Levine & Friedman, on brief), for plaintiff in error.*

*G. Curtis Overman, Jr. (Michalos & Overman, on brief), for defendants in error.*

CARRICO, J., delivered the opinion of the court.

Mildred S. Bales, in her own right and as administratrix of the estate of Benny E. Bales, her deceased husband, brought this action against Old Republic Life Insurance Company. The action sought recovery for the death of Benny E. Bales upon a group mortgage life insurance policy written by Old Republic insuring the lives of Mr. and Mrs.

Bales during the existence of a deed of trust on their home. Old Republic denied coverage on the ground that in his application for insurance Bales had falsely answered questions of a material nature relating to the state of his health.

A jury trial resulted in a verdict in favor of Mrs. Bales against Old Republic in the sum of $13,520.68. The trial court approved the verdict and entered final judgment thereon. We granted Old Republic a writ of error.

Old Republic first contends that the trial court erred in submitting the case to the jury. Old Republic argues that it was entitled to judgment as a matter of law because it proved conclusively that Bales had falsely represented the state of his health in his application for insurance.

But before we can consider this contention of Old Republic, we must determine what standard of proof it had to meet in proving the falsity of the statements made by Bales. The burden imposed upon Old Republic by the trial court was reflected in its rulings on instructions, so we turn to them first.

In Instructions Nos. 7, 9, and 10, granted at the behest of Mrs. Bales, the court told the jury that before Old Republic could escape liability it had to prove by clear, cogent, and convincing evidence that Bales had perpetrated a fraud in securing issuance of the insurance policy. Old Republic contends that this was error, and we agree.

In the ordinary case, where an insurance carrier seeks to escape liability for allegedly false statements made in an application for insurance, the proper standard of proof is gleaned from Code § 38.1-336. Under the Code section, the burden is on the carrier to *clearly* prove that a statement in an application is material to the risk when assumed and is untrue. Whether a statement is untrue is a question of fact for the jury, but when its falsity is proved, the question of materiality is for the court. And the fact that the statement was not willfully false or fraudulently made does not affect its materiality. *Chitwood* v. *Prudential*, 206 Va. 314, 318, 319, 143 S.E.2d 915, 918, 919 (1965).

Here, there is no dispute that the representations made by Bales in his application for insurance were material to the risk when assumed by Old Republic. So the focus is upon the question of what proof was required of Old Republic in showing that the statements were untrue.

If this were the ordinary case, clear proof of the mere falsity of the statements would have been sufficient. But this is not the ordinary case because in the application submitted by Bales it was recited that

his answers were correct to the best of his knowledge. Where there is such a recitation, the burden upon the insurance carrier increases from that specified in Code § 38.1-336 to clear proof that the answer is *knowingly* false. This was the rule enunciated in *Sterling Ins. Co.* v. *Dansey*, 195 Va. 933, 942, 81 S.E.2d 446, 452 (1954), and recognized, although not applied because of a factual difference, in *Mutual of Omaha* v. *Echols' Adm'rs*, 207 Va. 949, 952-53, 154 S.E.2d 169, 171-72 (1967).

However, although the burden of proof specified in *Dansey* is an increased one, it is not as great as that imposed on Old Republic in this case by Instructions Nos. 7, 9, and 10. As has been noted, those instructions required Old Republic to show by clear, cogent, and convincing evidence that Bales had perpetrated a fraud in securing issuance of the insurance policy. While securing an insurance policy by representations knowingly false may be a species of fraud, it is not necessary in such case to prove an intent to deceive as is true in certain fraud cases and as was implicit in the granted instructions. And proof by clear, cogent, and convincing evidence is something more than the clear proof required under the *Dansey* case.

It was error, therefore, to grant Instructions Nos. 7, 9, and 10. The proper burden upon Old Republic was to clearly prove that the statements made by Bales were knowingly false. With that standard of proof established, we return to Old Republic's contention that the trial court erred in submitting to the jury the question whether the statements were false.

Old Republic argues that its evidence showed conclusively that Bales knowingly made false statements in his application for insurance and it was, therefore, entitled to judgment as a matter of law. We do not agree.

In the application for insurance submitted by Bales, he was asked whether he had ever been told he had "Heart Murmer [*sic*], Cornary [*sic*] Disease, Rheumatic Fever, High Blood Pressure or Chest Pain." In a box supplied opposite the question, he replied, "Yes." Then, in amplification of the answer, he stated on the back of the application, "Once when I applied for a job 10 years ago, the doctor said I had a [*sic*] organic heart murmer [*sic*]. Have not had any trouble since."

A representative of Old Republic testified that, under its underwriting guidelines, a heart murmur occurring more than five years before the date of application would not affect insurability. The statement made by Bales was interpreted by Old Republic to mean that

he had not had a heart murmur for ten years, and so he was accepted as a risk.

To prove the falsity of the statements in the application, Old Republic called as its witness Bales' personal physician. He gave the only evidence concerning the state of Bales' health at the time of the application. According to the testimony of the doctor, he had seen Bales seven times, six of them between the first visit in October, 1966, and the date, June 30, 1970, of the application for insurance submitted to Old Republic by Bales.

The doctor testified that on the first visit, which was prompted because Bales had stepped on a nail, the patient was detected to have a loud heart murmur. Bales told the doctor he had had rheumatic fever as a child and had experienced the heart murmur for approximately fifteen years.

Bales next saw the doctor for a foreign substance in his eye. Then, in November, 1968, Bales again visited the doctor, complaining of chest pains. They were diagnosed as resulting from a muscle strain and were treated as such.

Bales' next visit to the doctor was in October, 1969, for a cold. He had a routine physical examination, and the only significant finding was his heart murmur.

On May 7, 1970, Bales, during another visit, again complained of chest pains. This time the doctor suspected "a cardiac problem with angina" and prescribed medication. Bales returned a week later. He had responded to treatment, and this made the doctor feel sure Bales was in fact suffering from angina. The patient was informed of the nature of his illness, and he was directed to continue with his medication.

The doctor next saw Bales on January 11, 1971. At that time, the patient complained of shortness of breath and "much chest pain." He stated that he had continued to take the medicine prescribed for angina the previous May. He was diagnosed as having "congestive heart failure," and a new medication was prescribed.

Bales died on February 22, 1971. The cause of death was listed on the death certificate, signed by Bales' personal physician, as "probable . . . cardiac arrhythmia . . . due to . . . severe mitral valvular disease . . . due to . . . acute rheumatic fever."

We need not decide whether the doctor's testimony, if unchallenged, would have been sufficient to show as a matter of law that Bales had knowingly made false statements in his application for in-

surance. The testimony was challenged. During cross-examination by Mrs. Bales' counsel, the doctor was questioned about and there was introduced into evidence a written statement he had made after Bales' death. In the statement, the doctor said that Bales had had no symptoms of heart disease, had not been "bothered with heart trouble at all," and had received no medication therefor until January, 1971, which was considerably later than the date of Bales' application for insurance. These parts of the written statement were, of course, in direct and material conflict with much of what the doctor testified to on the witness stand.

It is true, as Old Republic points out, that the doctor did say in the written statement that Bales knew of his childhood rheumatic fever, knew of his heart murmur, and had complained of chest pains, all near the time the application for insurance was submitted. These were facts the doctor also testified to on the witness stand, Old Republic says, and so there was no conflict concerning these material matters. Therefore, Old Republic concludes, the evidence was uncontradicted that Bales had knowingly lied about these matters in his application for insurance.

But it was for the trier of fact to weigh the doctor's testimony against his prior written statement. Since there was a material conflict between the two, the jury was free to reject all or any part of the evidence presented through him. If all of it was rejected, then, because Old Republic relied solely upon the doctor to prove the falsity of Bales' statements, there would have been no proof that Bales had knowingly lied in his application for insurance. Whether the evidence should have been rejected was peculiarly within the province of the jury, and the trial court properly permitted it to exercise its fact-finding function in resolving the question of the falsity of Bales' statements.

However, since Instructions Nos. 7, 9, and 10 were erroneous, the question was submitted to the jury under incorrect legal principles. The judgment appealed from will, therefore, be reversed and the case remanded for a new trial.

*Reversed and remanded.*