## Richmond

GLENS FALLS INSURANCE COMPANY v. JOHN GARNETT LONG, ET AL.

April 23, 1973.

Record No. 8079.

Present, I'Anson, Carrico, Harrison, Cochran, Harman and Poff, JJ.

*Alexander H. Slaughter (Murray H. Wright; McGuire, Woods & Battle,* on brief), for plaintiff in error.

*James M. Minor, Jr.; Aubrey R. Bowles, Jr. (Harrison Hubard, Jr.; Minor, Thompson, Savage, Smithers & Benedetti,* on brief), for defendants in error.

CARRICO, J., delivered the opinion of the court.

The determinative question for decision in this appeal is whether an automobile insurance carrier is required to prove the willfulness of a misrepresentation where it seeks to sustain the *ab initio* cancellation of an insurance policy issued under the Virginia Assigned Risk Plan.

The question arose in a declaratory judgment proceeding brought by John Garnett Long. He alleged that he was occupying a truck owned by Lewis Master Gardner when it was struck by an automo-

bile owned by Rebecca Ann Taylor and operated by her husband, Muscoe Taylor. It was further alleged that there were in force at the time of the accident two liability insurance policies, one issued to Mrs. Taylor on her vehicle by Glens Falls Insurance Company and another, containing uninsured motorist provisions, issued to Gardner on his truck by Insurance Company of North America. The two insurance companies, the Taylors, and Gardner were named parties defendant. The trial court was asked to declare that the two policies afforded coverage to Long for his injuries.

Glens Falls, the lone appellant here, defended on the ground that its policy issued to Mrs. Taylor had been cancelled *ab initio* in accordance with the provisions of the Virginia Assigned Risk Plan, under which it was issued. The reason assigned for the cancellation was that a material fact had been misrepresented in the application for insurance. It was claimed that Mrs. Taylor had falsely stated in her application that she would be the only operator of the vehicle to be insured when, in fact, her husband, who was unlicensed, was also an operator of the vehicle.

The trial court ruled that the provisions of the Assigned Risk Plan required Glens Falls to prove that the misrepresentation was willfully made. The court further ruled that while Mrs. Taylor had misrepresented a material fact, she had not done so willfully. Accordingly, the court held that the Glens Falls policy was in full force and effect on the Taylor vehicle at the time of Long's injury and afforded him coverage. The North America policy was held not to afford coverage since the Taylor vehicle was not uninsured. A final order was entered embodying the court's rulings, and Glens Falls was granted a writ of error.

The Virginia Assigned Risk Plan, more formally known as the Virginia Automobile Insurance Plan, is a voluntary agreement among the insurance carriers writing automobile liability insurance in Virginia.[1] It is designed to afford insurance coverage to those persons who, for various reasons, are poor risks and thus are unable to secure coverage

[1] The parties in their briefs refer to two classes of assigned risks in Virginia, namely, the so-called "statutory risks," for whom provision is made for assignment under a statutory scheme (Code § 46.1-497), and the so-called "poor risks," for whom the carriers originally devised their voluntary plan. In its brief, Glens Falls submits that a revision of the voluntary plan has "virtually rendered obsolete the statutory scheme," although "it is still technically available." However, since at the time of her application Mrs. Taylor fell exclusively within the "poor risk" class, as comprehended both in the original voluntary plan and the revision, we express no opinion upon the effect of the revision on the statutory scheme.

on their own through ordinary means. Assignments of risks to the participating companies are made pursuant to a formula not relevant here.

Under the Plan, a prospective insured must make application on a prescribed form. Mrs. Taylor could not secure ordinary insurance because she was under twenty-five years of age. Her assigned risk application was filled out in the office of an insurance agent in Tappahannock. Mrs. Taylor signed the application, and it was forwarded to the offices of the Plan in Richmond. The risk was assigned to Glens Falls, and the policy here in dispute was issued on September 13, 1970.

On October 24, 1970, the insured vehicle, then being driven by Muscoe Taylor, was involved in the collision in which Long was injured. Thereafter, Glens Falls gave Mrs. Taylor notice that it was cancelling the policy effective as of the date of issuance. The reason given for the cancellation was, "Unlicensed operator in household at time of application not shown therein."

In the prescribed application form, one of the questions requires an applicant to state the name and to give the operator's license number of each operator resident in the household of the applicant. The record is not clear whether this specific question was asked of Mrs. Taylor. However, the application listed only Mrs. Taylor as an operator. It was this statement upon which Glens Falls relied to show that a misrepresentation of a material fact had been made in the application for insurance. Glens Falls claimed that the statement was false because at the time Mrs. Taylor applied for insurance, her husband, Muscoe Taylor, was also an operator of the vehicle.

Glens Falls says that under the evidence the trial court properly found that Mrs. Taylor had misrepresented a material fact with respect to her husband's operation of the insured vehicle. Glens Falls contends, however, that the court erred in requiring it to go further and to show that the misrepresentation was willfully made. Such a showing, Glens Falls argues, was not required under the provisions of the Assigned Risk Plan.

In its argument, Glens Falls relies upon Section 9 of the Plan. That section, in pertinent part, reads as follows:

"An applicant . . . shall be considered for assignment upon making application in good faith to the Plan. An applicant shall be considered in good faith if he reports all information of a material nature, and does not willfully make incorrect or misleading statements,

in the prescribed application form or does not come within any of the prohibitions or exclusions listed below.

"An applicant shall not be entitled to insurance nor shall any subscriber be required to afford or continue insurance under the following circumstances:

"1. If any person who usually drives the motor vehicle does not hold or is not eligible to obtain an operator's license.

"2. * * *"

Glens Falls' position, as we understand it, is that, under circumstances similar to those in this case, Section 9 of the Plan gives it the right to cancel a policy *ab initio* in two alternative situations. The first, Glens Falls says, is where information of the existence of an unlicensed "usual" driver of the vehicle to be insured is withheld in the application for insurance, in which case it need not be shown that the misrepresentation was willful. The second, Glens Falls asserts, is where "incorrect or misleading statements" are made in the application for insurance concerning some material matter other than the existence of an unlicensed driver, in which case the willfulness of the misrepresentation must be shown.

We do not agree with Glens Falls' interpretation of Section 9. We think that under the section Glens Falls might initially have refused to afford Mrs. Taylor insurance if her application had disclosed that a "usual" driver of the vehicle to be insured was unlicensed. Or Glens Falls might have cancelled the policy prospectively if it discovered that an unlicensed person had become, since the time of the application, a "usual" driver of the insured vehicle. But since it here sought to sustain an *ab initio* cancellation on the ground that in the application for insurance there was a misrepresentation of a material fact, then it had the burden of showing that the misrepresentation was made willfully.

To willfully misrepresent is to make a statement deliberately and intentionally, knowing it to be false. And the standard of proof required to show willfulness, as well as the falsity of the statement and its materiality, is clear proof. *Old Republic Life Insurance Company v. Bales*, 213 Va. 771, 195 S.E.2d 854 (1973); *Casualty Company v. Robertson*, 206 Va. 863, 866, 871, 147 S.E.2d 94, 96, 99 (1966). Thus, the trial court did not err in placing upon Glens Falls the burden of showing by clear proof that Mrs. Taylor had deliberately falsified a material fact in her application for insurance.

■ This brings us to Glens Falls' other contention, *viz.*, that even if it was required to show that Mrs. Taylor had willfully misrepresented a material fact, the evidence supported a finding of willfulness as a matter of law. However, this contention requires no discussion other than for us to say that whether the misrepresentation was willfully made was a question of fact for the trial court, and our examination of the evidence leads us to believe that the court did not err in finding that there was no willfulness. We need not give this question further consideration because counsel for Glens Falls stated in oral argument before us that its first contention, previously discussed, presented "the only true issue" in the case.

The judgment of the trial court will be affirmed.

*Affirmed.*