**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JASON'S ENTERPRISES, INCORPORATED,
d/b/a Jason's Furniture Center,
<u>Plaintiff-Appellant,</u>

v.

GENERAL ACCIDENT INSURANCE

COMPANY OF AMERICA, d/b/a General
Accident Fire & Life Assurance
Corporation, P.L.C., d/b/a General
Accident Insurance,
<u>Defendant-Appellee.</u>

No. 95-2553

JASON'S ENTERPRISES, INCORPORATED,
d/b/a Jason's Furniture Center,
<u>Plaintiff-Appellee,</u>

v.

GENERAL ACCIDENT INSURANCE

COMPANY OF AMERICA, d/b/a General
Accident Fire & Life Assurance
Corporation, P.L.C., d/b/a General
Accident Insurance,
<u>Defendant-Appellant.</u>

No. 95-2554

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Chief District Judge.
(CA-94-1489-A)

Argued: June 3, 1996

Decided: June 25, 1996

Before RUSSELL, HALL, and LUTTIG, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** A. Andrew Giangreco, Fairfax, Virginia, for Appellant. Tina Lynn Snee, Deborah Aileen Lisker, SLENKER, BRANDT, JENNINGS & JOHNSTON, Merrifield, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Jason's Enterprises, Inc. ("Jason's Enterprises") appeals the district court's order entering judgment upon jury verdict in favor of General Accident Insurance Company of America ("GAI") on Jason's Enterprises' claims seeking damages for GAI's rescission for material misrepresentation of a policy of business owner's insurance. Jason's Enterprises contends, inter alia, that GAI was estopped from defending its decision to void the policy with any reason not specifically enumerated in its initial letter notifying Jason's Enterprises that the policy was void for material misrepresentation. We reject this argument because the additional items of misrepresentation were timely disclosed and Jason's Enterprises suffered no prejudice.

I.

Taiser Ramamni owned and operated furniture stores in Maryland and Northern Virginia. In 1988, Taiser Ramamni opened his first

2

store in Waldorf, Maryland, which was operated by Jason's Furniture Center, Inc., a corporation owned by Taiser. His brother, Jamal Ramamni, co-owned and managed the Waldorf store. Taiser Ramamni also opened a furniture store in Glen Burnie, Maryland in 1988, which was owned by another of Taiser's corporate identities-- Jason's International Service. In 1990, Taiser Ramamni opened a third store in Virginia, which was operated in Manasses under the trade name Jason's Furniture Center by Jason's Enterprises, Inc., a third corporation owned by Taiser.

In May 1992, Taiser Ramamni, on behalf of Jason's Enterprises, Inc., purchased a business owner's insurance policy from GAI for the Virginia store. In January 1993, the Virginia store burned under suspicious circumstances, and the local police considered Taiser Ramamni an arson suspect.[1] GAI independently investigated the loss, and discovered that Jason's Enterprises had made material misrepresentations on the insurance application. Specifically, GAI discovered that on March 3, 1992, the Waldorf store also sustained a fire loss under suspicious circumstances, and the police suspected Jamal Ramamni of arson. In the GAI insurance application for the Virginia store, Taiser Ramamni averred that Jason's Enterprises, Inc. had not sustained a previous loss. Because of the closely-held nature of both Jason's Enterprises and Jason's Furniture Center, Inc., GAI considered their corporate identities to be virtually identical, and Taiser Ramamni's statement that no previous loss was sustained to be a misrepresentation.

For the same reason, GAI also considered Jason's Enterprises to have made a material misrepresentation when it averred that no previous insurance policies were cancelled or non-renewed. GAI discovered that State Farm provided a policy of business insurance for the Waldorf store. Jason's Furniture Center, Inc. had filed a $400,000 claim for losses sustained in the March 1992 fire at the Waldorf store, which State Farm settled for $25,000. Because of the large discrepancy between the claim and the settlement amount, GAI considered this equivalent to a cancellation of that policy. Hence, GAI considered

_____

[1] The police investigation was inconclusive as to the source of the fire except that it was of suspicious origin.

3

Taiser Ramamni's statement that no previous policy was cancelled to be another misrepresentation.

On April 23, 1993, GAI notified Jason's Enterprises by letter that it was voiding the insurance policy for material misrepresentation. GAI stated that it would not have entered into the contract for insurance if it had known of the previous loss to the Waldorf store. Jason's Enterprises thereafter filed the present lawsuit contending, inter alia, that GAI breached the insurance contract.

During discovery, GAI disclosed three more misrepresentations Jason's Enterprises had made in the application for insurance.**2** These additional instances were disclosed through answers to interrogatories. At trial, GAI defended Jason's Enterprises' lawsuit with all instances of misrepresentation. The jury returned a verdict in favor of GAI. This appeal followed.

II.

Jason's Enterprises argues on appeal, as it did below, two grounds why GAI should have been barred from defending this lawsuit with any other allegations of misrepresentation not specifically enumerated in GAI's April 23 letter voiding the policy. Jason's Enterprises contends that under the Virginia Insurance Code, insurers are limited in their defense of a decision to void a policy by the specific reasons stated in the initial written notice to the insured. Alternatively, Jason's Enterprises asserts that principles of the equitable doctrine of estoppel barred GAI from arguing additional instances of misrepresentation.

_____

**2** Although not completely clear from the record, it appears the additional instances of alleged misrepresentation were the following statements that Jason's Enterprises: (1) does not own or operate any other business; (2) does not own or operate any other business not covered by this insurance policy; (3) has been in business for 15 years.

4

A.

The Virginia Insurance Code provides in relevant part:

> No cancellation or refusal to renew by an insurer of a policy of insurance as defined in . . . § 38.2-118 insuring a business entity . . . shall be effective unless the insurer delivers or mails to the named insured . . . written notice of the cancellation or refusal to renew. Such notice shall:

* * *

> 3. State the specific reason or reasons of the insurer for cancellation or refusal to renew;

Va. Code Ann. § 38.2-231 (Michie 1994). Extrapolating from this language, Jason's Enterprises contends that because a policy cancellation is effective only if the written notice states the specific reasons for the cancellation, then logically GAI could defend its decision to void the policy only with reference to those specific reasons.

We do not think it is at all clear that GAI "cancelled" the policy within the meaning of § 38.2-231.[3] There is a fundamental distinction between a decision to cancel a policy and a decision to void a policy ab initio. In the case of the former, termination of coverage is prospective only. In other words, the insured remains covered for losses occurring prior to the effective date of the cancellation. In contrast, when an insurer voids a policy ab initio, as in the present case, the termination of coverage is total. The policy is rescinded and the premium returned under the theory that the parties never had a sufficient meeting of the minds to form a legally-binding contract:

> To rescind a contract is not merely to terminate it, but to abrogate and undo it from the beginning; that is, not merely to release the parties from further obligation to each other in respect to the subject of the contract and restore the par-

_____

[3] Jason's Enterprises does not argue that voiding the policy amounted to a "refusal to renew" within the meaning of§ 38.2-231.

5

ties to the relative positions which they would have occupied if no such contract had ever been made. Rescission necessarily involves a repudiation of the contract and a refusal of the moving party to be further bound to it. But this by itself would constitute no more than a breach of the contract or a refusal of performance, while the idea of rescission involves the additional and distinguishing element of a restoration of the status quo. . . . 1 Black on Rescission and Cancellation, § 1.

Wall v. Zynda, 278 N.W. 66, 68 (Mich. 1938) (internal quotations omitted). Such is the case when an insurer voids a policy ab initio for material misrepresentation. The insurer voids the policy because, had it known the truth, it would never have issued the policy in the first instance, or it would have issued the policy pursuant to different terms.

The plain language of § 38.2-231 does not reveal whether the Virginia General Assembly intended use of the word "cancellation" to also encompass "rescissions" or "voidings." The Virginia Insurance Code does not define the term "cancellation," and no published authority in Virginia has interpreted § 38.2-231. But, the requirements of § 38.2-231 itself intimate an answer. Apart from requiring the insurer to enumerate specific reasons for cancelling the policy, § 38.2-231 also requires that the insurer state in its written notice the date upon which the cancellation is effective. Under § 38.2-231(A)(2), that date cannot be less than forty-five days after the delivery or mailing of the notice of cancellation. Thus, it appears that the notice requirement of § 38.2-231 does not apply to a rescission, which by its very nature is effective immediately and applies retroactively to discharge all obligations past and future.

Nonetheless, in recognition of the fact that the terms "cancelled," "rescinded," and "void" are often used synonymously in the insurance context, see Van Horn v. Atlantic Mut. Ins. Co. , 641 A.2d 195, 203 n.6 (Md. 1994), we will refrain from further attempting to resolve this question of Virginia state law. We hold instead, as did the district court, that even if § 38.2-231 applies to rescissions or voidings, GAI adequately satisfied the statutory requirements. Section 38.2-231 does not state when the notice must be given; it merely requires that the

6

notice be written and that it specify the reasons for the cancellation. We believe GAI satisfied this notice requirement by detailing the additional instances of alleged misrepresentation in answers to interrogatories during discovery.

The district court appears to have added an additional requirement when it further found that it was uncontroverted that GAI could not have disclosed the additional instances of misrepresentation in its April 23 letter because it was not yet aware of their existence. We agree with Jason's Enterprises that this finding is not supported by the record. At oral argument before this court, GAI's counsel inexplicably averred that GAI was not on notice of the additional instances until after April 23; however, Thomas Tonks, GAI's own witness and the author of the April 23 letter, clearly testified at trial to the contrary. Tonks stated he was aware of all instances of misrepresentation at the time he prepared the letter, but that he only included two because they were independently sufficient to support the decision to void the policy. (J.A. at 157, 161, 163-64).

Any error in the district court's finding, however, was harmless because we do not believe the timing of GAI's knowledge to be relevant. As previously stated, GAI gave written notice of the additional reasons prior to trial, which we believe is all § 38.2-231 requires. Accordingly, we reject Jason's Enterprises' argument based upon the Virginia Insurance Code.

B.

We similarly reject Jason's Enterprises' argument grounded on estoppel. To invoke the equitable doctrine of estoppel, Jason's Enterprises must show its prejudicial reliance on "some act, conduct, or non-action of the insurer." Western World Ins. Co. v. Hartford Mut. Ins. Co., 784 F.2d 558, 563 (4th Cir. 1986). In other words, Jason's Enterprises must establish that it relied to its detriment on a belief that GAI would not assert further instances of misrepresentations. Such detrimental reliance cannot typically be established where the insurer "fairly informs [the insured] of its position and gives timely notice." Norman v. Insurance Co. of North America, 239 S.E.2d 902, 907 (Va. 1978). Because we believe that GAI fairly and timely informed Jason's Enterprises in advance of trial of its intent to rely on addi-

7

tional instances of misrepresentations, GAI was not equitably estopped from asserting those instances in its defense.

III.

We turn next to Jason's Enterprises' contention that the district court erred in ruling that forty-one documents sought from GAI were privileged from disclosure under the work product doctrine, and in granting GAI's motion to quash a subpoena served on its investigators.

A.

During discovery, GAI claimed that forty-one of the numerous documents requested by Jason's Enterprises were protected from disclosure by the work product doctrine. Although not part of the joint appendix before us, GAI submitted these documents under seal for an in camera review by the district court. **4** The court subsequently denied Jason's Enterprises' motion to compel discovery.

The work product doctrine serves to protect from disclosure material prepared by an adversary's counsel "`with an eye toward litigation.'" Commonwealth v. Edwards, 370 S.E.2d 296, 302 (Va. 1988) (quoting Hickman v. Taylor, 329 U.S. 495, 511 (1947)). The privilege encompasses such things as "`interviews, statements, memoranda, correspondence, briefs, mental impressions, [and] personal beliefs.'" Id. We review the district court's decision concerning application of this evidentiary privilege for abuse of discretion. See In re Grand Jury Subpoena, 884 F.2d 124, 128 (4th Cir. 1989).

Jason's Enterprises attacks the district court's denial of its motion to compel discovery, contending that the district court erred in determining that the documents at issue were prepared in anticipation of litigation. According to Jason's Enterprises, every document prepared

_____

**4** GAI contends the documents contain such items as: an assessment and evaluation determining the case's worth should it proceed to trial; opinions requested of counsel; notes of a criminal investigation against Jamal Ramamni; and opinions of an investigator hired by GAI discussing progress in the criminal investigation against Jamal Ramamni.

8

by an insurance company is in some respects prepared in anticipation of litigation. Hence, Jason's Enterprises contends insurance companies should be subjected to a more narrow construction of the privilege, and GAI should at least be required to disclose those materials prepared prior to the time litigation became a realistic possibility.

In effect, Jason's Enterprises asks this court to hold that litigation only became a realistic possibility on April 23, 1993, when GAI sent the letter voiding the policy. By this logic, any documents prepared prior to that date cannot be privileged as work product. We reject this contention. Obviously, GAI was investigating the fire loss prior to April 23, and it likely formed an opinion about Jason's Enterprises' misrepresentations and the possibilities of litigation prior to that date. We see no merit to a bright-line holding which would render only those documents prepared after a claim is denied or a policy voided subject to the work product privilege. Hence, we reject this claim.

Jason's Enterprises also contends that even if the documents were prepared in anticipation of litigation, it is entitled to their discovery under Fed. R. Civ. P. 26(b)(3), which provides that a party may obtain discovery of documents prepared by an adversary, or an adversary's representatives, in anticipation of litigation upon a showing of substantial need for the documents and an inability to obtain their substantial equivalent without undue hardship. We reject this assignment of error because Jason's Enterprises has utterly failed to articulate any reason to believe that it had a substantial need for the documents, or that it would be unable to obtain their equivalent without undue hardship. We therefore hold that the district court did not abuse its discretion in protecting these documents from disclosure after examining them in camera.

B.

On a related note, Jason's Enterprises also challenges the district court's order granting GAI's motion to quash a subpoena seeking some of the materials determined to be work product. GAI hired the firm of Cotter, Neimeyer & Lynch ("CNL") to assist with investigation of the claim. As part of its investigation, CNL prepared documents for GAI. Unsuccessful in obtaining those documents from GAI, Jason's Enterprises served a subpoena directly on CNL. The district

9

court granted GAI's subsequent motion to quash the subpoena. However, because the subpoena was served on the investigative firm hired by GAI, rather than on GAI itself, Jason's Enterprises contends GAI lacked standing to move to quash the subpoena.

We disagree. The work product privilege applies to protect documents prepared in anticipation of litigation "by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3). Because CNL was an agent or consultant to GAI, CNL's documents generated pursuant to that relationship clearly fall within the scope of protection contemplated by Rule 26. Accordingly, GAI was entitled to assert the privilege over documents prepared for it by CNL, which were in CNL's possession. It follows, therefore, that GAI had standing to move to quash the subpoena that sought those documents directly from CNL.

IV.

Jason's Enterprises next contends the district court abused its discretion by overruling its motion for a mistrial and permitting GAI to introduce evidence that the police consider both Taiser and Jamal Ramamni to be arson suspects in fires at the Virginia and Waldorf stores, respectively. According to Jason's Enterprises, this evidence was irrelevant to GAI's material misrepresentation defense and it was highly prejudicial.

One of the reasons cited by GAI for its decision to void the policy ab initio was that Taiser Ramamni failed to disclose the prior fire loss at the Waldorf store. Accordingly, evidence of the existence of that prior loss was certainly relevant to GAI's material misrepresentation defense. While some district court judges may have limited the evidence to the mere fact of the loss, we do not think it was an abuse of discretion for the district court here to allow introduction of foundation or background evidence concerning the circumstances of that fire.

However, we are not similarly persuaded that the district court acted within the permissible scope of its discretion when it admitted evidence that the fire at the Virginia store was of suspicious origin,

or that Taiser Ramamni was an arson suspect. This evidence was not probative of any of the grounds upon which GAI relied to support its material misrepresentation defense. Recognizing this, GAI asserts that it was entitled to introduce the arson evidence to rebut Jason's Enterprises' claim for attorneys fees under Va. Code Ann.§ 38.2-209(A) (Michie 1994), which required establishing that GAI acted in bad faith when it voided the policy. According to GAI, it was entitled to introduce evidence that it acted in good faith, which encompassed introduction of evidence of everything its investigation discovered about Taiser Ramamni, including the suspicious nature of the fire and that he was an arson suspect.

We disagree with GAI's reasoning. Because GAI specifically limited its decision to void the policy to the misrepresentations in the insurance application, the district court should have similarly limited the focus of the good faith inquiry to evidence concerning those misrepresentations. The fire at the Virginia store may have been the event which precipitated GAI's discovery of the misrepresentations, but we see nothing about the circumstances surrounding the fire that was relevant to misrepresentations made eight months earlier.[5]

Nonetheless, to the extent the district court may have erred in this regard, we believe that error was harmless. GAI introduced ample evidence that Jason's Enterprises misrepresented, among other things, that it had not sustained a prior loss, that it operated no other businesses, and that it had been in business fifteen years. We are satisfied the jury reached its verdict with reference to the specific evidence probative of GAI's misrepresentation defense.

_____

[5] We do not believe, however, that this evidence was as prejudicial as Jason's Enterprises asserts. It is indisputable that the fire at the Virginia store was of a suspicious origin and that the police suspect Taiser Ramamni of arson. GAI could have elected to cancel coverage under the policy on this ground and pursued that defense at trial, at which point the arson evidence would clearly have been material and probative. That GAI opted instead to void the policy for misrepresentation in the application is all that prevented the arson evidence from being relevant.

V.

Lastly, Jason's Enterprises contends that the district court erred in instructing the jury on misrepresentation. According to Jason's Enterprises, the district court was required to instruct the jury that GAI could not void the insurance policy ab initio for misrepresentation unless that misrepresentation was willful.

This argument is without merit. The Virginia Insurance Code provides that no statement in an application for insurance will bar recovery unless the statement was material and untrue. Va. Code Ann. § 38.2-309 (Michie 1994). There is no statutory requirement that the misrepresentation also be willful. The authorities cited by Jason's Enterprises in support of its position involve insurance policies specifying that only a "willful" misrepresentation will void the policy. See Glens Falls Ins. Co. v. Long, 195 S.E.2d 887, 889 (Va. 1973) (language in automobile insurance application provided that insurer could reject application only if applicant willfully made incorrect or misleading statements therein); Old Republic Life Ins. Co. v. Bales, 195 S.E.2d 854, 856 (Va. 1973) (stating that in the ordinary case, mere proof of the misrepresentation is enough to void a policy, but in this case the insurer must establish that misrepresentation was done knowingly because signature recital on application stated that the answers therein were correct to the best of applicant's knowledge). In contrast, the insurance policy at issue here did not specify that only willful misrepresentations would void the policy. Accordingly, we reject Jason's Enterprises' argument.

VI.

For the foregoing reasons, we affirm the district court's order entering judgment upon the jury's verdict. By reaching this holding we dispense with the need to examine GAI's cross-appeal challenging the district court's decision to allow the issue of bad faith to be decided by the jury.

AFFIRMED

12