**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-1994

MEDICAL MUTUAL INSURANCE COMPANY OF NORTH CAROLINA,

Plaintiff – Appellee,

v.

CATHY GNIK, Individually and as Mother and Next Friend of N.A., A Minor and N.L. A Minor; COURTNEY ANDREW-KNIGHT; TRISTEN ANDREW-MAJOR; KATHLEEN BELL, Individually, and as Mother and Next Friend of A.B., A Minor; NIKKI BURGESS, Individually, and as Parent and Next Friend of M.B., A Minor; DANIEL BURGESS, Individually, and as Parent and Next Friend of M.B., A Minor; BRIANNA CANNAVO, Individually, and as Mother and Next Friend of S.C., A Minor; KIMBERLY CORREA, Individually and as Parent and Next Friend of A.C., A Minor; PEDRO CORREA, Individually and as Parent and Next Friend of A.C., A Minor; MEAGAN CRAWFORD, Individually and as Parent and Next Friend of E.C., A Minor; CARTER CRAWFORD, Individually and as Parent and Next Friend of E.C., A Minor; SIERRA DAVIS; VALLI DAVIS; JAMES DAVIS; KASHA HAYWOOD, Individually and as Parent and Next Friend of Z.H., A Minor; JESSE HAYWOOD, Individually and as Parent and Next Friend of Z.H., A Minor; RALPH JOHNSON, JR., Individually and as Parent and Next Friend of J.J., A Minor; CATHERINE MIDDLEKAUFF; CAMDEN MIDDLEKAUFF; LESLI COCKRELL-NALLS, Individually and as Parent and Next Friend of L.N., A Minor, and as Parents of Karah Nalls and Karah Nalls, Individually; BILLY NALLS, Individually and as Parent and Next Friend of L.N., A Minor, and as Parents of Karah Nalls and Karah Nalls, Individually; KIMBERLEY OVERTON, Individually and as Parent and Next Friend of L.O., A Minor; MARK AUSLEY, Individually and as Parent and Next Friend of L.O., A Minor; MARIA PAVLAK, Individually, as Parent and Legal Guardian of Rita Pavlak, and as personal representative of Richard Pavlak; RITA PAVLAK; JEFFREY ROOSA; ALVEENA SPENCER; JOHN VIARELLA; AVA WAGGONER; DAPHNEY WAGGONER; WILLIAM WAGGONER; LISA WILLIAMS, Individually and as Parent and Next Friend of J.W., A Minor, and N.W., A Minor; MARIO WILLIAMS, Individually and as Parent and Next Friend of J.W., A Minor, and N.W., A Minor; RYLAND LOVITT; DIANN CARREKER;

CHRISTINNE GOVEREAU, as Administratrix of the Estate of Austin Rodriguez, Deceased,

        Defendants – Appellants,

  and

JONI J. JOHNSON, M.D.; PEDIATRIC PARTNERS FOR ATTENTION AND LEARNING, INC.; VERNON GREEN, JR.; G CUBED MINISTRIES, d/b/a GCubed Community Services, a/k/a G3 Community Services; JENNIFER GAUSE; KAMAU GAUSE; C.D., A Minor by Next Friend and through his Mother, Jennifer Gause; L.G., A Minor by Next Friend and through her Father, Kamau Gause; I.G., A Minor by Next Friend and through her Mother, Jennifer Gause; A.D., A Minor by Next Friend and through her Mother, Jennifer Gause,

        Defendants.

---

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Liam O'Grady, Senior District Judge. (1:19–cv–01601–LO–TCB)

---

Argued: December 6, 2023            Decided: February 16, 2024

---

Before RICHARDSON, QUATTLEBAUM, and BENJAMIN, Circuit Judges.

---

Affirmed by published opinion. Judge Quattlebaum wrote the opinion, in which Judge Richardson and Judge Benjamin joined.

---

**ARGUED:** Patrick A. Thronson, JANET, JANET & SUGGS, LLC, Baltimore, Maryland, for Appellants. Danny Mark Howell, LAW OFFICES OF DANNY M. HOWELL, PLLC, Vienna, Virginia, for Appellee. **ON BRIEF:** Stephen C. Rigg, Baltimore, Maryland, Matthew M. White, JANET, JANET & SUGGS, LLC, Columbia, South Carolina, for Appellants. Jennifer L. Rowlett, Davina A. Anderson, LAW OFFICES OF DANNY M. HOWELL, PLLC, McLean, Virginia, for Appellee.

---

2

QUATTLEBAUM, Circuit Judge:

Former patients of Pediatric Partners for Attention and Learning, Inc., sued the clinic and its founder, Dr. Joni Johnson, in state court after learning that the clinic's in-house psychologist Sharonda Avery, who treated them, was actually not a psychologist at all.[1] Pediatric Partners and Dr. Johnson asked their professional liability insurance carrier, Medical Mutual Insurance Company of North Carolina, to defend and indemnify them in those lawsuits. In response, Medical Mutual brought a declaratory judgment action in federal court, arguing that it could rescind the policy covering Pediatric Partners and Dr. Johnson because of Dr. Johnson's material misstatements in her insurance applications. The district court agreed and granted Medical Mutual's motion for summary judgment.

On appeal, the patients ask us to reverse the district court's order granting summary judgment. They argue that genuine issues of material fact exist as to whether Dr. Johnson made a material misstatement in her policy applications. We disagree, so we affirm.

I.

A.

In 2012, Dr. Johnson founded Pediatric Partners as a multidisciplinary clinic offering medical, behavioral and cognitive services to children and adults in Virginia. That year, Dr. Johnson hired Sharonda Avery as an educational advocate, a position that did not

---

[1] In some instances, claims were brought by the parents of former minor patients. For convenience, we refer to the former patients and their representatives bringing this appeal as "the patients."

require a license. In 2013, Avery approached Dr. Johnson about becoming Pediatric Partners' in-house psychologist, claiming that she had recently obtained a Ph.D. in General Psychology and would soon earn a Psy.D. in Clinical Psychology. However, Avery was lying. She never enrolled in a Ph.D. or Psy.D. program. In fact, Avery did not have a college degree. But Dr. Johnson purportedly believed Avery's representations. Thus, in 2014, Dr. Johnson promoted Avery to Director of Cognition and Instruction, which involved cognitive testing, including autism assessments.

Before Avery assumed her new role, Dr. Johnson asked Avery for proof of her license to practice psychology. Avery told Dr. Johnson that she had a three-year provisional license because she herself had autism. When Dr. Johnson asked for proof of that license, Avery did not provide any. And for good reason—she was lying about that, too. But Avery's inability to produce a license did not stop her. Though dishonest, Avery was resourceful. Instead of proof of a provisional license, she provided Dr. Johnson with fake Ph.D. and Psy.D. diplomas. This apparently satisfied Dr. Johnson, so Avery began administering cognitive testing to patients while holding herself out as a psychologist.

In the spring of 2014, the Virginia Department of Health Professions ("VDHP") received a complaint that Avery was practicing psychology without a license. A VDHP investigator visited Pediatric Partners and spoke with Dr. Johnson about the complaint. While Dr. Johnson knew the complaint concerned Avery's alleged practice of psychology without a license, she insists that, at the time, she was not privy to the complaint's details. In May 2014, VDHP sent Avery a letter stating that it had investigated the complaint and closed the matter as "undetermined." J.A. 569. Dr. Johnson testified at her deposition that

4

she knew in 2014 that Avery received this letter, but it is unclear when Dr. Johnson actually saw it.

Undeterred by VDHP's investigation, Avery approached Dr. Johnson a few months later about providing therapy services to Pediatric Partners' patients. Avery told Dr. Johnson that her provisional license—which, again, was fictional—permitted her to provide therapy so long as she worked under the direction of a clinical supervisor. Dr. Johnson claims she believed this tale, as well. Under the supervision of certain licensed professional counselors at Pediatric Partners, Avery began providing counseling services. This included providing cognitive behavioral therapy to patients struggling with depression and other mental health conditions, teaching patients with attention deficit hyperactivity disorder how to manage their behavior and providing family therapy to patients and their families.

In January 2017, nearly three years after Avery's promotion, Dr. Johnson asked Avery about the status of her three-year provisional license. Avery bobbed and weaved again. This time, Avery told Dr. Johnson, without elaboration, that she did not think she could become permanently licensed. Even so, Dr. Johnson permitted Avery to continue providing testing and therapy services. A few months later, in March 2017, Avery transitioned to part-time employment at Pediatric Partners after announcing that she had accepted a new job in autism research. In reality, Avery had expanded her unlawful practice of psychology without a license by accepting a counseling position at an unrelated non-profit organization. Due to her limited availability, Avery began transferring her therapy

5

patients to other providers. She then focused her time at Pediatric Partners on cognitive testing.

Later in 2017, while Avery was working part-time at Pediatric Partners, Dr. Johnson sought professional liability coverage from Medical Mutual through a third-party insurance agent. Dr. Johnson completed an Entity Professional Liability Application ("Entity Application") and, separately, a Medical Practitioners Professional Liability Application ("Practitioner Application"). The Entity Application included the question, "Has the Applicant or any of its employees ever been the subject of disciplinary investigative proceedings or a reprimand by a governmental or administrative agency, hospital, or professional association?" J.A. 713. Despite knowing about the 2014 VDHP inquiry, Dr. Johnson answered, "No." J.A. 713. Additionally, the Practitioner Application required certain employees of Pediatric Partners to complete separate applications. Dr. Johnson's insurance agent emailed a Medical Mutual underwriter, at Dr. Johnson's request, to ask whether the "Psychologist – who is part-time and not licensed" needed to complete a separate application. J.A. 819. The Medical Mutual underwriter responded that a separate application was "not needed." J.A. 820. As a result, Dr. Johnson did not list Avery in the Practitioner Application as an employee supplying a separate application. In both the Entity Application and Practitioner Application, Dr. Johnson certified the truth of her representations and affirmed that she understood that "the policy, if issued, is conditioned upon the truth of the representations in this application" and "that the falsity of any representation made in this application for insurance could cause the denial of a claim or the cancellation of my protection[.]" J.A. 715, 724.

6

Medical Mutual issued a professional liability policy to Dr. Johnson and Pediatric Partners for a period of September 1, 2017, to September 1, 2018. But the policy had a retroactive effective date of September 1, 2012, meaning it covered claims based on conduct going back to that date.

In September 2017, Dr. Johnson terminated Avery—not because of Avery's fraud, but due to her increasing unavailability. Dr. Johnson claimed that she only learned of Avery's fraud after Avery left Pediatric Partners.

At some point in 2017, Dr. Johnson filed claims with Medical Mutual based on two complaints made to the VDHP against her. While the details of these complaints are not entirely clear, they included claims such as "potential billing and insurance fraud," "misinformation about doctor status," "failure to provide credentials" and "[a]llegations of falsifying information about licensing and status of employees." J.A. 815. But whatever the details, there is no dispute that these complaints related to Avery's fraud. Medical Mutual ultimately paid around $35,000 in expenses associated with the two complaints during the first policy period. Still, Medical Mutual renewed the policy—albeit at a higher premium after identifying the complaints in the policy renewal worksheet—for a period of September 1, 2018, to September 1, 2019.

Authorities arrested Avery in 2019 on multiple state charges stemming from her fraudulent conduct. In 2020, she was convicted and sentenced to prison. Around this time, the patients sued Dr. Johnson and Pediatric Partners in Virginia state court. In response,

7

Medical Mutual filed this declaratory judgment action against the patients, other state court

claimants,[2] Dr. Johnson and Pediatric Partners in federal court.

B.

Medical Mutual sought a declaration that it has no duty to indemnify or defend Dr.

Johnson or Pediatric Partners under Virginia law due to material misstatements made by

Dr. Johnson in her policy applications.[3] Specifically, section 38.2-309 of the Virginia Code

provides that "[n]o statement in an application or in any affidavit made before or after loss

under the policy shall bar a recovery upon a policy of insurance unless it is clearly proved

that such answer or statement was material to the risk when assumed and was untrue."

Medical Mutual moved for summary judgment, arguing that Dr. Johnson's representation

in the Entity Application that none of her employees had been the subject of disciplinary

investigative proceedings was a material misstatement considering VDHP's 2014

investigation into Avery's unlicensed practice of psychology.[4]

---

[2] Aside from the patients appealing the district court's grant of summary judgment to Medical Mutual, other state court claimants include former patients of Pediatric Partners who did not join this appeal and the non-profit organization for which Avery began providing counseling services in 2017.

[3] We apply Virginia's conflict-of-law rules because this case arose under the diversity jurisdiction of the district court sitting in Virginia. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 494 (1941). And under Virginia law, "the law of the place where an insurance contract is written and delivered controls issues as to its coverage." *Buchanan v. Doe*, 431 S.E.2d 289, 291 (Va. 1993). Here, that place is Virginia.

[4] Medical Mutual also points to two additional alleged misrepresentations. In her policy applications, Dr. Johnson represented that she did not have "knowledge of any circumstances involving the rendering or failure to render professional services that could result in a claim being brought against [her]." J.A. 715, 724. And though Avery's

8

The district court granted Medical Mutual's summary judgment motion, concluding that Medical Mutual had clearly proven that Dr. Johnson's answer to the disciplinary investigative proceedings question was a material misstatement. The district court reasoned that Avery undisputedly had been the subject of a 2014 investigation by VDHP, making Dr. Johnson's statement in the Entity Application that none of her employees had been the subject of disciplinary investigative proceedings false. In denying the patients' motion to alter or amend the judgment, the district court rejected their assertion that a genuine issue of material fact existed as to the intentionality and materiality of that misstatement. The patients timely appealed.[5]

---

supervision agreements characterized Avery as a "Post-Doctoral Resident," Dr. Johnson represented in the policy applications that she did not employ any "Residents/Fellows." J.A. 724. But because Dr. Johnson's misrepresented whether any of Pediatric Partners' employees had been the subject of disciplinary investigative proceedings, we need not, and do not, analyze these separate alleged misrepresentations.

[5] We briefly address a jurisdictional issue that could have been avoided by more careful pleading. Though Medical Mutual's underlying complaint alleged diversity jurisdiction under 28 U.S.C. § 1332, its pleadings failed to demonstrate that it is a corporation subject to the corporate citizenship considerations of § 1332(c). At the Court's invitation, Medical Mutual filed a supplemental letter and exhibits establishing that it is incorporated under the laws of North Carolina. The patients failed to offer any sound rebuttal. Accordingly, we are satisfied that the district court permissibly exercised its diversity jurisdiction. We also note that Medical Mutual may bring its suit under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), given that Medical Mutual sought a declaratory judgment concerning its duty to defend as well as its duty to indemnify. *See Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 200 (4th Cir. 2019) (explaining that "suits about the duty to indemnify—unlike the duty-to-defend suits—would ordinarily be advisory when the insured's liability remains undetermined"). And following the district court's entry of final judgment, we have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

9

## II.

We review de novo a district court's grant of summary judgment. *Jones v. Chandrasuwan*, 820 F.3d 685, 691 (4th Cir. 2016). "Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting *Bostic v. Schaefer*, 760 F.3d 352, 370 (4th Cir. 2014)). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)). A fact is material if it might affect the outcome of the case. *Id.* The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The burden then shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial." *Id.* (quoting Fed. R. Civ. P. 56(e)). The facts and all justifiable inferences arising therefrom must be viewed in the light most favorable to the non-movant. *Jones*, 820 F.3d at 691.

## III.

Section 38.2-309 of the Virginia Code permits an insurer to rescind an insurance policy if the insured made a material misstatement in the policy applications. *See St. Paul Fire & Marine Ins. Co. v. Jacobson*, 48 F.3d 778, 780 (4th Cir. 1995); *see also* Va. Code § 38.2-309. The insurer bears the burden of clearly proving a material misstatement. *Montgomery Mut. Ins. Co. v. Riddle*, 587 S.E.2d 513, 515 (Va. 2003). In challenging the district court's grant of summary judgment to Medical Mutual based on section 38.2-309,

10

the patients raise two issues. First, they contend that there is a genuine issue of material fact as to whether Dr. Johnson's representation that none of her employees had been the subject of disciplinary investigative proceedings was a misstatement. Second, even if that representation was a misstatement, Appellants argue that there is a genuine issue of material fact as to whether that misstatement was material. For the reasons below, we reject both arguments.

### A.

Beginning with Dr. Johnson's alleged misstatement, the patients' argument boils down to two contentions. They first insist that a genuine dispute of material fact exists as to whether Dr. Johnson subjectively knew her supposed misstatement was false.[6] Second, setting aside Dr. Johnson's subjective knowledge, the patients assert that Medical Mutual failed to clearly prove that "disciplinary investigative proceedings" encompass the 2014 investigation into Avery such that Dr. Johnson's representation even constituted a misstatement.

With respect to the patients' first point, Dr. Johnson's subjective knowledge of the falsity of her representation is irrelevant. Under Virginia law, unless an insured qualified

---

[6] Relevant to the patients' argument concerning Dr. Johnson's subjective knowledge is their assertion that the district court improperly considered a letter written by Dr. Johnson to a VDHP investigator in 2018. The patients argue that this letter cannot be considered because it is privileged under section 54.1-2400.2 of the Virginia Code. Even if this letter is privileged under that provision—and we do not agree that it is—the patients waived that privilege by introducing the letter into the record at summary judgment. *See Motor Club of Am. Ins. Co. v. Hanifi*, 145 F.3d 170, 175 (4th Cir. 1998) (finding that "the defendants waived any objection to the admissibility of [a] report when they submitted it to the court on at least three separate occasions with their motions for summary judgment").

11

her statements as being to the best of her knowledge, or with some similar limitation, "clear proof of mere falsity of the statements [is] sufficient." *See Old Republic Life Ins. Co. v. Bales*, 195 S.E.2d 854, 856 (Va. 1973). Only if the insured qualified her representations as being true to the best of her knowledge must the insurer provide clear proof that the insured knew her representations were false. *See Sterling Ins. Co. v. Dansey*, 81 S.E.2d 446, 452 (Va. 1952). Here, Dr. Johnson's pertinent representations are not qualified. Her representation in the Entity Application that none of her employees had been the subject of disciplinary investigative proceedings concluded with the following certification: "I certify the representations in this application to be true and understand that the policy, if issued, is conditioned upon the truth of the representations in this application." J.A. 715. Though the patients insist that Dr. Johnson qualified "certain answers" as being true to the best of her knowledge, *see* Op. Br. at 10–11 n.4, the relevant representations here do not fall within the "certain answers" identified by the patients. She qualified her certification only to a small subset of questions in both the Entity Application and the Practitioner Application regarding "Prior Acts Coverage" and "Claims History." *See* J.A. 712, 715, 718, 724. Her remaining representations in both applications, however, are subject to the unqualified certification quoted above. Because the representations at issue here do not fall under the "Prior Acts Coverage" or "Claims History" sections, clear proof of the mere falsity of Dr. Johnson's representation is sufficient to show a misstatement. *See Bales*, 195 S.E.2d at 856. Medical Mutual was not required to show that Dr. Johnson knew her representation was false.

This leads to the patients' second contention. They insist that Medical Mutual did not clearly prove that Dr. Johnson's representation that none of her employees had been the subject of disciplinary investigative proceedings was actually a misstatement. Appellants argue that the term "disciplinary investigative proceedings" either does not encompass VDHP's 2014 investigation into Avery or at least is ambiguous so that it must be construed in favor of coverage. Medical Mutual, on the other hand, argues that the district court correctly determined that the term unambiguously covers the 2014 investigation.

"Courts in Virginia apply traditional principles of contract interpretation when reviewing insurance policies." *Levine v. Emps. Ins. Co. of Wausau*, 887 F.3d 623, 627 (4th Cir. 2018). Thus, when a policy term is unambiguous, a court will apply its plain meaning. *Erie Ins. Exch. v. Jones by Hardison*, 870 S.E.2d 716, 718 (Va. 2022). But where "disputed policy language is ambiguous and can be understood to have more than one meaning," a court will "construe the language in favor of coverage and against the insurer." *Id.* (internal quotations omitted). A term is not ambiguous simply because it may have more than one meaning, though. *See Erie Ins. Exch. v. EPC MD 15, LLC*, 822 S.E.2d 351, 355 (Va. 2019). "Under Virginia law, conflicting interpretations reveal an ambiguity only where they are reasonable." *Id.* "A 'reasonable' . . . interpretation is one of two competing interpretations that are 'equally possible' given the text and context of the disputed provision." *Id.* (citations omitted).

"Disciplinary investigative proceedings" is not defined by the Entity Application. Nor is it defined by the Practitioner Application or the insurance policy. And no party offers

13

a definition from dictionaries or an explanation from relevant case law. The parties primarily focus on the phrase's noun: proceedings. The patients advance a narrow definition of proceedings—something akin to legal or administrative actions or hearings. They, therefore, maintain that the 2014 investigation is not a disciplinary investigative proceeding because a "mere investigation" does not constitute a proceeding. Op. Br. at 22 (internal quotes omitted). In contrast, Medical Mutual resists such a cramped definition. According to Medical Mutual, proceedings is a term that applies to more than just formal legal or administrative actions.

Dictionaries support both sides' interpretations of proceedings. For instance, Black's Law Dictionary defines "proceeding" as, among other things, "[a]n act or step that is part of a larger action," as well as "[a]ny procedural means for seeking redress from a tribunal or agency." *Proceeding*, Black's Law Dictionary (11th ed. 2019). While the former supports Medical Mutual's interpretation of the term, the latter supports the patients' position. Similarly, among other definitions, the Oxford English Dictionary defines "proceeding" to mean "[a] particular action or course of action" and "a legal action or process." *Proceeding*, Oxford English Dictionary (3d ed. 2011). Again, Medical Mutual's position finds support in the former definition, while the patients' interpretation is supported by the latter.

With these competing definitions, our job would be more difficult if all we had to go on was the word "proceedings." But fortunately, we have more. We have the linguistic context for the Entity Application's use of "proceedings." And, sometimes, one can tell

14

what a word means "by the company it keeps." *Tvardek v. Powhatan Vill. Homeowners Ass'n*, 784 S.E.2d 280, 285 (Va. 2016) (internal quotes omitted).

The adjectives "disciplinary" and "investigative" modify "proceedings." Together, these adjectives indicate that the noun "proceedings" concerns matters involving the investigation into conduct that could give rise to discipline—in other words, disciplinary investigations. And since disciplinary investigations do not necessarily equate to formal actions or hearings, limiting the meaning of "disciplinary investigative proceedings" to formal actions or hearings would be unreasonable.

Also, "disciplinary investigative proceedings" is followed by "*or* a reprimand by a governmental or administrative agency, hospital, or professional association[.]" J.A. 713 (emphasis added). The use of "or" indicates the parties understood "disciplinary investigative proceedings" to be distinct from a "reprimand," which is a form of discipline. This distinction reveals that disciplinary investigative proceedings need not actually result in the imposition of any discipline. Moreover, a "reprimand" often results from a formal proceeding. The contrast between "disciplinary investigative proceedings" and a term generally related to formal proceedings is further evidence the parties did not intend to limit a "disciplinary investigative proceedings" to formal actions or hearings.

Thus, considering the entire phrase and its context, "disciplinary investigative proceedings" is not ambiguous. It does not require a formal hearing or action. And it certainly encompasses the VDHP's 2014 investigation of Avery practicing psychology without a license. There is no dispute that Avery was the subject of a 2014 investigation by VDHP based on a complaint that she was practicing psychology without a license,

15

which would have led to disciplinary action if substantiated. But Dr. Johnson answered "no" when the Entity Application asked whether any of her employees had been the subject of disciplinary investigative proceedings to assess the risk of insuring Dr. Johnson's practice. In this context, a reasonable person would understand the phrase disciplinary investigative proceedings to encompass a state licensing agency's investigation into a person for allegedly practicing psychology without a license. It is not reasonable to interpret the term as only concerning formal proceedings following such an investigation. Accordingly, Medical Mutual clearly proved that Dr. Johnson made a misstatement when she represented that none of her employees had been the subject of disciplinary investigative proceedings.

B.

We next turn to the patients' assertion that a genuine issue of material fact exists as to whether Dr. Johnson's misstatement was material. However, where a statement's "falsity is proved, the question of materiality is for the court." *See Bales*, 195 S.E.2d at 856. "A fact is material to the risk to be assumed by an insurance company if the fact would reasonably influence the company's decision whether or not to issue a policy." *Mut. of Omaha v. Dingus*, 250 S.E.2d 352, 355 (Va. 1979). Similarly, the materiality of a misstatement may be established by clearly proving that the company would have issued the policy at an increased premium. *See Buckeye Union Cas. Co. v. Robertson*, 147 S.E.2d 94, 96 (Va. 1966).

Medical Mutual contends that the affidavits of two of its underwriters carried its burden of clearly proving the materiality of Dr. Johnson's misstatement. Both underwriters

16

indicated that, had Dr. Johnson accurately represented that one of her employees had been the subject of a disciplinary investigative proceeding, Medical Mutual would have learned of the 2014 investigation into Avery and refused to issue the policy. But the patients argue that this does not clearly prove that Dr. Johnson's misstatement was material, since Medical Mutual renewed the policy after paying nearly $35,000 in expenses related to complaints made against Dr. Johnson in connection with Avery's fraud. The patients also contend that because the underwriters' affidavits only state that Medical Mutual would not have issued the policy at all, we cannot use those affidavits to infer at summary judgment that Medical Mutual would have alternatively issued the policy at an increased premium.

The problem with the patients' argument is two-fold. First, because the falsity of Dr. Johnson's representation has been proven, the materiality of that misstatement is a question for the court. *See Bales*, 195 S.E.2d at 856. This means that the summary judgment principle that all reasonable inferences must be drawn in the patients' favor does not apply. Simply because the underwriters indicated that Medical Mutual would not have issued the policy at all does not mean that we cannot infer from the record that Medical Mutual would have, instead, issued the policy at an increased premium. Second, and relatedly, the underwriters' affidavits are not the only evidence of materiality in the record. Though Medical Mutual renewed the policy after paying several thousand dollars in expenses relating to complaints stemming from Avery's work at Pediatric Partners, the record reveals that Medical Mutual only did so after increasing the premiums. Immediately after summarizing the complaints made against Dr. Johnson during the first policy period for, among other things, "falsifying information about licensing and status of employees" and

17

"potential billing fraud," the policy's renewal worksheet announces an increased premium. J.A. 815 ("Renewal premium will be $9,448 versus $7,738 last year.").

Based on the underwriters' affidavits and the renewal worksheet, we find that Dr. Johnson's misstatement was material. Medical Mutual has clearly proven that it would have issued the policy at an increased premium—if at all—had Dr. Johnson accurately represented that Avery had been the subject of disciplinary investigative proceedings.[7]

IV.

Accordingly, we affirm the district court's grant of summary judgment to Medical Mutual. There is no genuine dispute of material fact that Dr. Johnson made a material misstatement in her policy applications, meaning that Medical Mutual is permitted to rescind its professional liability policy covering Pediatric Partners and Dr. Johnson under Virginia law.

*AFFIRMED*

---

[7] The patients also argue that Medical Mutual waived its right to raise the issue of Dr. Johnson's misstatement because Dr. Johnson disclosed her employment of a "not licensed and part-time" psychologist when completing her policy applications and was told by a Medical Mutual underwriter that a separate application for such an employee was "not needed." We disagree. Dr. Johnson's disclosure was insufficient to put Medical Mutual on notice that Dr. Johnson was employing an unlicensed, part-time psychologist *who was actively practicing psychology*.